SERGE DOYEN ET AL. *v.* ZONING BOARD OF APPEALS OF THE TOWN OF ESSEX ET AL.
(AC 20875)

Lavery, C. J., and Landau and Healey, Js.

Argued September 13, 2001—officially released January 15, 2002

*Alan J. Rome*, with whom was *Steven L. Katz*, for the appellants (defendant Salvatore Sapia et al.).

*John S. Bennet*, for the appellee (plaintiff Virginia Williams).

*Opinion*

HEALEY, J. The defendants Salvatore Sapia and Marie Sapia (Sapias) appeal from the judgment of the trial court sustaining the appeal of the plaintiff Virginia Williams[1] from the decision by the defendant zoning board of appeals of the town of Essex (board), which upheld the zoning enforcement officer's granting of the Sapias' application for a permit for residential renovations. On appeal, the Sapias claim that in reversing the board's decision, the court improperly (1) interpreted the Essex zoning regulations as prohibiting a property owner from vertically expanding into the airspace over an existing side setback nonconformity, (2) substituted its judgment for that of the board, (3) applied the Essex zoning regulations retroactively, which illegally invalidated an existing nonconforming improvement, and (4) deprived the Sapias of a constitutionally protected vested property right. We agree with the Sapias on the first two claims, which we find to be dispositive, and, accordingly, we reverse the judgment of the trial court without addressing the remaining claims.

---

[1] The named plaintiff, Serge Doyen, is no longer a party to this appeal. We, therefore, refer in this opinion to the plaintiff Virginia Williams as the plaintiff.

The following facts and procedural history are relevant to our resolution of the Sapias' appeal. On or about March 4, 1998, the Sapias filed an application for a zoning permit for renovations with respect to their residence at 1 Willow Point Road in Essex. The Sapias' application requested permission to construct an addition that contemplated a vertical expansion that would not exceed the "existing structural footprint" of their house. The proposed addition would extend five to six feet over, but not beyond, the existing deck on the side of the house. The house, which was constructed prior to the adoption of the Essex zoning regulations in 1966, is a legally nonconforming structure in that a portion of the foundation and the deck attached to the same side of the house extend into the twenty-five foot side setback area required by the regulations.

On the same day that the Sapias filed their application, the Essex zoning enforcement officer, Larry Gilliam, issued the requested permit. Thereafter, the plaintiff and others, alleging that they were abutting property owners, appealed from the zoning officer's decision to the board. They claimed that the proposed addition authorized by the permit violated a number of the town's zoning regulations dealing with setbacks, nonconforming uses and "other matters."

On April 21 and May 5, 1998, the board held public hearings on the appeal during which counsel for both sides presented evidence. Gilliam also made a presentation and answered questions from the board and the parties' counsel. Gilliam, who has been the town's zoning officer since 1982, testified that when calculating coverage and setbacks, decks are treated as part of the structure and that he has "always issued permits for people who want to go up over those existing structures as long as they maintain the height requirement." He maintained that he could "come up with probably twenty-five or thirty examples of permits that [he had]

issued in the past eighteen to twenty years in this kind of situation." Specifically as to the Sapias' property, Gilliam stated: "[T]his property . . . was an existing property, the building exists on the property and as far as I'm concerned, they're not extending, they're not expanding. . . .

"I don't buy the argument that it's an extension or expansion of a characteristic because the characteristics exist. I understand that this building exists in the setback. I'm not arguing that it doesn't. I'm just saying that if you have a characteristic that exists, that you should be able to build up over that characteristic as long as you don't go over the height. . . .

"[A]s far as the permit goes, as far as this application goes, there is no extension, there's no expansion beyond the existing footprint of the building."

Gilliam was then asked to comment on and give his interpretation of § 50D of the Essex zoning regulations[2] concerning the extension or expansion of nonconforming uses and improvements. As to the first paragraph of § 50D, Gilliam stated: "My interpretation of that first paragraph is that the key [to] this whole paragraph is except in conformity with these regulations. As long as people intended to comply with characteristics established for the district. In this case, it happens to be [the] thirty-five foot height limitation. And they do not

---

[2] Section 50D of the Essex zoning regulations provides: "No use of any land or improvement having a nonconforming characteristic, and no improvement having a nonconforming characteristic, shall be enlarged, extended, or expanded except in conformity with these Regulations.

"No nonconforming use or characteristic of any land or improvement shall be enlarged, extended, or expanded.

"Completing the enclosure of a previously roofed porch, without changing its size or shape, shall not be considered an extension or expansion of a nonconforming use or improvement."

expand outward to take up more land area that they're in compliance with the requirements of the regulation."[3]

As to the second paragraph of § 50D, Gilliam stated: "This [paragraph] speaks for itself. . . . There's not a question of use here as far as I'm concerned.[4] It's a residential use in a residential district so we aren't expanding nonconforming uses. . . . We aren't changing the characteristics of the land at all. We aren't changing the shape or size of the land or anything. The improvement shall be . . . expanded. We are not enlarging, extending or expanding the characteristics of the building except in compliance with the [regulations]." Gilliam also pointed out that the permit he issued to the Sapias was "issued specifically to not expand [or] extend . . . and it had to stay within the existing footprint of the structure."[5]

On May 5, 1998, after considering the evidence presented before it, the board voted unanimously to uphold

---

[3] The proposed thirty-two foot height of the Sapias' addition does not violate the thirty-five foot height limitation set forth in § 40J of the Essex zoning regulations.

[4] We note that § 20A of the Essex zoning regulations defines "nonconforming use" as follows: "Any use of land or improvement which is not a use permitted by these Regulations but which was legally and actually existing at the effective date of these Regulations or any pertinent amendment thereto . . . ."

[5] As to the third paragraph of § 50D, Gilliam stated: "What that means is that if you have a deck or a porch that is existing within the setback area [and] it has a roof over it, [y]ou can enclose that space without it being considered an extension or expansion of a characteristic of the building." This paragraph is not applicable to the Sapias' permit because their deck was not a "previously roofed porch." The court, however, states in footnote 4 of its decision that this paragraph is notable because "[t]he absence of a comparable regulation concerning additions to houses suggests that the intent of the regulations was to make such additions fully subject to the general prohibition on expansion of nonconformities." As we will discuss in this opinion, the court's position wholly disregards the import of the first paragraph of § 50D, which specifically provides a window of tolerance for the expansion of nonconforming improvements. It also is contrary to the board's consistent interpretation of the zoning regulations.

Gilliam's decision to issue the permit. In rendering its decision, the board stated, inter alia, that "Gilliam's interpretation of the regulations is consistent with the interpretation of the regulations by this board, and by the present and previous zoning enforcement agent, that they have been applied consistently over a number of years in this town and that the interpretation does not constitute an expansion of a nonconformity and does not violate the nonconformity sections of the regulations as they are written. This speaks to sections a, b, d, e, f, and g of the appeal."[6]

On May 20, 1998, the plaintiff appealed to the trial court from the board's decision.[7] On March 7, 2000, the court sustained the plaintiff's appeal, reversing the decision of the board. Thereafter, the Sapias filed a petition for certification to this court, which was granted on May 24, 2000. On June 8, 2000, the Sapias filed this appeal.[8]

The Sapias first claim that in reversing the board's decision, the court improperly interpreted the Essex zoning regulations as prohibiting a property owner from vertically expanding into the airspace over an existing side setback nonconformity. We agree with the Sapias.

[6] These portions of the plaintiff's appeal to the board specifically referred to the following sections of the zoning regulations: (a) § 10B, purposes: nonconformity; (b) § 40I.1, setbacks: general; (c) § 40J, height limitation; (d) § 50B, nonconforming uses and improvements (change to conformity); (e) § 50C.2, nonconforming uses and improvements (change to nonconformity); (f) § 50D, nonconforming uses and improvements (extension or expansion); and (g) § 60B, village residential required characteristics (setbacks).

[7] In an administrative appeal, to have standing, plaintiffs are required to prove that they have been aggrieved by the agency's decision. See *Jolly, Inc.* v. *Zoning Board of Appeals*, 237 Conn. 184, 192, 676 A.2d 831 (1996). On the basis of undisputed evidence that the plaintiff was an abutting property owner, the trial court properly found that the plaintiff was aggrieved by the board's decision. See General Statutes § 8-8 (1); *Smith* v. *Planning & Zoning Board*, 203 Conn. 317, 321, 524 A.2d 1128 (1987).

[8] Although the board has not filed an appeal, it has filed notice that it joins in and supports the Sapias' brief.

As a preliminary matter, we set forth the standard of review. "Generally, it is the function of a zoning board or commission to decide within prescribed limits and consistent with the exercise of [its] legal discretion, whether a particular section of the zoning regulations applies to a given situation and the manner in which it does apply. The trial court had to decide whether the board correctly interpreted the section [of the regulations] and applied it with reasonable discretion to the facts. . . . In applying the law to the facts of a particular case, the board is endowed with a liberal discretion, and its decision will not be disturbed unless it is found to be unreasonable, arbitrary or illegal. . . . [U]pon appeal, the trial court reviews the record before the board to determine whether it has acted fairly or with proper motives or upon valid reasons . . . . We, in turn, review the action of the trial court." (Citations omitted; internal quotation marks omitted.) *Spero* v. *Zoning Board of Appeals*, 217 Conn. 435, 440, 586 A.2d 590 (1991). "The burden of proof to demonstrate that the board acted improperly is upon the party seeking to overturn the board's decision." (Internal quotation marks omitted.) *Pleasant View Farms Development, Inc.* v. *Zoning Board of Appeals*, 218 Conn. 265, 269–70, 588 A.2d 1372 (1991).

"A local board or commission is in the most advantageous position to interpret its own regulations and apply them to the situations before it." *New London* v. *Zoning Board of Appeals*, 29 Conn. App. 402, 405, 615 A.2d 1054, cert. granted, 224 Conn. 921, 618 A.2d 528 (1992) (appeal withdrawn March 18, 1993). "Although the position of the municipal land use agency is entitled to some deference . . . the interpretation of provisions in the ordinance is nevertheless a question of law for the court. . . . The court is not bound by the legal interpretation of the ordinance by the [board]." (Citations omitted; internal quotation marks omitted.) *Northeast*

*Parking, Inc.* v. *Planning & Zoning Commission*, 47 Conn. App. 284, 293, 703 A.2d 797 (1997), cert. denied, 243 Conn. 969, 707 A.2d 1269 (1998). If a board's time-tested interpretation of a regulation is reasonable, however, that interpretation should be accorded great weight by the courts. *Office of Consumer Counsel* v. *Dept. of Public Utility Control*, 252 Conn. 115, 121, 742 A.2d 1257 (2000).

In the present case, the principal issue on appeal is the interpretation of certain provisions of the Essex zoning regulations. Because the trial court in interpreting the regulations has made conclusions of law, our review is plenary. *Fleet National Bank* v. *Zoning Board of Appeals*, 54 Conn. App. 135, 139, 734 A.2d 592, cert. denied, 250 Conn. 930, 738 A.2d 656 (1999); *Ammirata* v. *Zoning Board of Appeals*, 65 Conn. App. 606, 610, 782 A.2d 1285, cert. granted on other grounds, 258 Conn. 938, 786 A.2d 425 (2001). "[W]e [therefore] must decide whether the conclusions are legally and logically correct and supported by the facts in the record." *Fleet National Bank* v. *Zoning Board of Appeals*, supra, 139.

In discussing this issue, we note that "[a] local ordinance is a municipal legislative enactment and the same canons of construction which we use in interpreting statutes are applicable to ordinances." (Internal quotation marks omitted.) *Pelliccione* v. *Planning & Zoning Commission*, 64 Conn. App. 320, 335, 780 A.2d 185, cert. denied, 258 Conn. 915, 782 A.2d 1245 (2001). "A court must interpret a statute as written . . . and it is to be considered as a whole, with a view toward reconciling its separate parts in order to render a reasonable overall interpretation. . . . A zoning ordinance is a local legislative. enactment, and in its interpretation the question is the intention of the legislative body as found from the words employed in the ordinance. . . . The words [employed] are to be interpreted according to their usual and natural meaning and

the regulations should not be extended, by implication, beyond their expressed terms. . . . The language of the ordinance is construed so that no clause or provision is considered superfluous, void or insignificant." (Citations omitted; internal quotation marks omitted.) Id., 335–36. "Common sense must be used in construing the regulation, and we assume that a rational and reasonable result was intended by the local legislative body." *Spero* v. *Zoning Board of Appeals*, supra, 217 Conn. 441.

The preamble to the Essex zoning regulations provides in relevant part that "[i]t is a fundamental principle of zoning law that nonconformities are not to be expanded and that they should be abolished or reduced to conformity as quickly as the fair interests of the parties will permit. This principle is declared to be the intent of these regulations." Essex Zoning Regs., § 10B. While § 10B sets forth the general policy that nonconformities are not favored in zoning law, this section must be read in the light of § 50D, which specifically provides a window of tolerance for the expansion[9] of nonconforming improvements like the Sapias' deck.[10] Section 50D provides in relevant part that "no improvement having a nonconforming characteristic, shall be enlarged, extended, or expanded *except in conformity with these Regulations. . . .*" (Emphasis added.) This portion of § 50D stands in sharp contrast to the remain-

[9] We focus on the term "expansion" in our discussion because the court focused on this term in its decision.

[10] Pursuant to § 20A of the Essex zoning regulations, a nonconforming improvement or characteristic is defined as "[a]ny improvement or characteristic of any land or improvement which does not conform to these Regulations but which was legally and actually existing at the effective date of these Regulations . . . ."

Section 20A of the Essex zoning regulations defines a deck in relevant part as "[a] *structural improvement* elevated above the surface of the ground, not having a roof, and attached to a building. . . ." (Emphasis added.)

der of the section which provides in relevant part that "[n]o nonconforming . . . characteristic of any . . . improvement shall be enlarged, extended, or expanded. . . ." A fair interpretation of § 50D thus expressly anticipates the permissive expansion of an improvement having a nonconforming characteristic as long as the nonconforming characteristic is not expanded and the expansion is otherwise in conformity with the regulations. Any other reading would defeat the common sense approach that must be used in construing regulations. The relevant question, therefore, becomes whether the Sapias' proposed addition constitutes an expansion of a nonconforming characteristic of an improvement under the regulations.[11]

In rendering its decision, the court explicitly rejected the board's interpretation of the regulations that the vertical expansion of the portion of a structure that is nonconforming as to a setback does not constitute, in and of itself, an expansion of a nonconforming characteristic of the structure. In crafting its own interpretation, the court focused on § 40I.1 of the Essex zoning regulations,[12] which provides in relevant part that "required setbacks shall be open and unobstructed to the sky . . . ." This section essentially adds a vertical component to the setback, making the required setback area three dimensional. Applying § 40I.1, the court reasoned that "although the addition did not increase the horizontal dimension of the setback nonconformity, it expanded the nonconformity" by intruding into the setback zone, rendering it no longer " 'open and unobstructed to the sky' in violation of § 40I.1." The court concluded that "[s]uch expansion into the setback zone was therefore in derogation of the provisions of § 50D

---

[11] There is no dispute that the proposed addition is otherwise in conformity with the regulations. See footnote 4.

[12] The court's decision indicates that "[§] 40I.2 addresses detached accessory buildings and is not relevant to this case." We agree.

that mandate that '[n]o nonconforming . . . character-istic of any . . . improvement shall be enlarged, extended, or expanded.' " The court's interpretation of the regulations misses the mark in a number of ways.

The court improperly determined that § 40I.1 was applicable to the facts of this case. In rejecting the defendants' argument that § 40I.1 does not apply when the setback zone is already "compromised" at the ground level, the court stated that the defendants' inter-pretation with respect to the applicability of § 40I.1 was "plausible," but incorrect in light of public policy, which disfavors the extension of nonconformities.

In its explication, the court overlooks the fact that the proposed renovation was entirely within the footprint of the Sapias' residence as it existed in 1966, when the regulations were first enacted.[13] The preexisting foot-print, which includes the deck, creates its own legal nonconforming setback.[14] Pursuant to § 20A of the

---

[13] There is no dispute that the proposed addition was wholly within the existing structural footprint. In her brief, the plaintiff argues that in *Bloom* v. *Zoning Board of Appeals*, 233 Conn. 198, 658 A.2d 559 (1995), our Supreme Court expressly rejected the significance of considering whether the noncon-formity lies within the existing structural footprint in nonconformity cases. We do not read *Bloom* as adopting that view.

The dispositive issue in *Bloom* was "whether the principles of equitable estoppel entitle the owners of a legally nonconforming building to a variance on the ground of hardship when, in reliance on an erroneously issued building permit, the owners have expanded and altered the building within the non-conforming areas." Id., 199. The Supreme Court concluded that the property owners' reliance on an erroneous building permit did not constitute such a hardship. See id.

In citing *Bloom*, the plaintiff does not refer us to any language in support of her claim that the Supreme Court rejected the "footprint theory."

[14] The minutes of the May 5, 1998 special meeting of the board indicate that the board's chairman opined that "when the regulations were brought into existence in 1966, this building already existed, including the deck, which means this has a nonconforming right which is different tha[n] the nonconformity that is allowed by variance. The fact that the deck existed at the time zoning was enacted gives it a different right than one granted by variance later on."

Essex zoning regulations, a setback is defined as "the required open space *between any improvement and a lot line* . . . measured perpendicularly from each lot line . . . ." (Emphasis added.) Section 40I.1 provides that "*required setbacks* shall be open and unobstructed to the sky . . . ." (Emphasis added.) The "shall be open and unobstructed to the sky" language thus applies only to "required setbacks." In the present case, pursuant to § 20A, the required setback is the open space between the Sapias' nonconforming footprint and the lot line. It is this space that must be "open and unobstructed to the sky." In no way does the plain language of the regulations require that the airspace *above* the legal nonconforming footprint be "open and unobstructed to the sky." Therefore, the court improperly concluded that § 40I.1 is applicable to the airspace above the Sapias' legally nonconforming footprint.

Furthermore, in basing its rejection of the defendants' "plausible" position with respect to the applicability of § 40I.1 on the general policy that the law disfavors the extension of nonconformities, the court wholly disregards the import of § 50D, which expressly anticipates the permissive expansion of an improvement having a nonconforming characteristic as long as the nonconforming characteristic is not expanded and the expansion is otherwise in conformity with the regulations. The exception in § 50D may be narrow, but it is nevertheless significant in this case and it cannot be disregarded. "Where there are two provisions in a [regulation], one of which is general and designed to apply to cases generally, and the other is particular and relates to only one case or subject within the scope of a general provision, then the particular provision must prevail; and if both cannot apply, the particular provision will be treated as an exception to the general provision." (Internal quotation marks omitted.) *Gaynor* v. *Union Trust Co.*, 216 Conn. 458, 476–77, 582 A.2d 190

(1990). Therefore, when the regulations are considered in the light of § 50D, there clearly exists a window of tolerance for the expansion of nonconforming improvements like the Sapias' deck. Accordingly, the court's total reliance on the general policy that the law disfavors the extension of nonconformities in rejecting the defendants' "plausible" position with respect to the applicability of § 40I.1 is misplaced.[15]

The court also improperly substituted its own judgment for that of the board in rejecting the board's implicit conclusion that § 40I.1 does not apply under the circumstances of this case. "Generally, it is the function of a zoning board or commission to decide . . . whether a particular section of the zoning regulations applies to a given situation and the manner in which it does apply." (Internal quotation marks omitted.) *Spero* v. *Zoning Board of Appeals*, supra, 217 Conn. 440. The court justifies its lack of deference to the board by concluding that the board did not even consider § 40I.1 in reaching its decision.[16] We disagree with the court's conclusion.

"There is a presumption that a public officer properly performs his duty unless the contrary appears." *Cahill* v. *Board of Education*, 198 Conn. 229, 242, 502 A.2d 410 (1985). We therefore can assume that when the board states, as it did, that in concurring with Gilliam's interpretation of the regulations, which is consistent with its own interpretation over the years, that such an interpretation was made only after careful consideration of all the regulations, including § 40I.1. We cannot accept the court's view that the lack of a specific refer-

---

[15] The court stated: "In view of this policy, this court should not favor an interpretation of the regulations that would, at the least, not reduce a nonconformity and, at the most, expand a nonconformity."

[16] The court stated that "there is no evidence that the board has taken the import of § 40I.1 into account . . . . Thus there is no specific interpretation of § 40I.1 to which this court should defer."

ence to § 40I.1 in the board's decision prohibits it from giving any deference to the board's position on this issue.

Furthermore, in reviewing the record, we find that there is no basis for the court's finding that the board did not consider the applicability of § 40I.1 in reaching its decision. At the April 21, 1998 hearing before the board, the plaintiff's counsel discussed in detail the plaintiff's position with respect to the applicability of § 40I.1.[17] Gilliam, in his presentation to the board, explicitly rejected the plaintiff's argument.[18] The board agreed with Gilliam, stating that there was not an expan-

---

[17] The plaintiff's counsel stated in relevant part: "Now, I've submitted a long statement which I know you probably have read and certainly can read, but I would highlight a couple of issues. [Section] 10B of your regulation talks about nonconformities and they are as they say anathemas. They are not to be encouraged. They are not to be enhanced. They are not to be increased. . . . And that's what we are talking about doing when we talk about a plan that's going to take that two story house and do this to it. Expand the coverage and so forth. I would highlight for you although I think this is simply an example of the expansion of the nonconformities of the setbacks of § 40I, and, in particular, under § 40I.1, the general section, it says except as otherwise prescribed in § 40I.2, required setbacks shall be open and unobstructed to the sky. If you're going to add this covered portico, porch, whatever we call it, on the end of this property and extend the roof line, extend the side dormer out even further into the setbacks than the initial, the original structure now extends, you're blocking, obstructing some of that area between the ground and the sky. Now, I've talked to Larry [Gilliam] about this. We went over it at some length and he said well there's already a deck out there and I'm sure he'll correct me if I'm misrepresenting anything that he says and that it has been his practice, if you've got some coverage even if it's a deck like that you can go up as high as you want to within the height restriction. I'm here to tell you that you can't do that. That your regulations don't permit it, and the state statutes don't permit it. . . .

"I submit to you that whatever else can be said about this application is it has to be said that the nonconformities are being expanded into the side line coverage and otherwise, and the zoning permit that was issued in this case isn't permissible. I'll take it a step further than that and say to you that any expansion beyond this box of the four walls and the roof represented by the original structure is inappropriate."

[18] Gilliam's presentation before the board has been set out previously in this opinion, and, therefore, we will not restate it here.

sion of a nonconformity and there was no violation of the nonconformity sections of the regulations. In rendering its decision, the board specifically rejected, inter alia, part (b) of the plaintiff's appeal, in which the plaintiff claimed that the zoning permit violated § 40I.1 of the regulations. In the argument section of the appeal, the plaintiff stated that § 40I.1 provides that "setbacks shall be open and unobstructed to the sky" and that this language "demonstrates the clear policy of the town of Essex to set a bulk standard for structures and not to permit the expansion of the height over the existing 'footprint' of a building if that footprint does not conform to zoning requirements." We conclude that, in expressly rejecting part (b) of the plaintiff's appeal, the board considered the applicability of § 40I.1 in reaching its decision and, therefore, the court's contrary conclusion is incorrect.

Finally, the court, in determining whether the board properly interpreted the regulations, improperly failed to give any weight to the board's consistent interpretation of the regulations over the years. "A local board . . . is in the most advantageous position to interpret its own regulations and apply them to the situations before it." *New London* v. *Zoning Board of Appeals*, supra, 29 Conn. App. 405. If a board's time-tested interpretation of a regulation is reasonable, that interpretation should be accorded great weight by the courts. *Office of Consumer Counsel* v. *Dept. of Public Utility Control*, supra, 252 Conn. 121.

Again, the court justifies its lack of deference to the board by concluding that "there is no evidence that the board has taken the import of § 40I.1 into account in its practice." In light of our previous discussion, we conclude that it was improper for the court not to give some deference to the board. Moreover, because the board's interpretation was "plausible," the court should

have accorded it "great weight."[19] See id. The board's consistent interpretation of the regulations also supports the conclusion that the board's decision was not arbitrary.

We conclude that the court's conclusions of law are not legally and logically correct and that they are not supported by the facts in the record. The board's decision was not illegal, arbitrary or an abuse of its discretion. The decision was reasonably supported by the record and effectuates the intent of the Essex zoning regulations. Accordingly, the court improperly reversed the decision of the board.[20]

The judgment is reversed and the case is remanded to the trial court with direction to render judgment affirming the decision of the board.

In this opinion the other judges concurred.

---

[19] According to Merriam-Webster's Collegiate Dictionary (10th Ed. 1998), plausible means, among other things, reasonable.

[20] In so holding, we note that the cases cited by the plaintiff, *Gians* v. *Zoning Board of Appeals*, Superior Court, judicial district of Middlesex, Docket No. 57306 (March 19, 1991), *Settipane* v. *Zoning Board of Appeals*, Superior Court, judicial district of Middlesex, Docket No. 45435 (February 20, 1987), and *Bloom* v. *Zoning Board of Appeals*, supra, 233 Conn. 198, are readily distinguishable from the present case.

In the absence of precisely applicable appellate authority on the underlying issue in this case, we have carefully reviewed both the text and implications of the three proffered decisions. We conclude that each decision is analytically inapposite and unpersuasive in the present case because those decisions either address zoning regulations that are markedly distinct from those in effect in Essex, or provide only summary attention to the zoning regulations, without express discussion of the manner in which specific provisions could or should be construed as establishing a vertical component to the setback requirements. In addition, all three cases, unlike the case before us, involve an application for a variance. We also note that the factual basis of the *Settipane* and *Bloom* decisions are vague and ambiguous with respect to the issue before us.