[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
 STATEMENT OF APPEAL
The plaintiffs, Helen and Joseph Orzel, appeal from the decision of the defendant, the Old Lyme zoning board of appeals, which upheld the final determination by the zoning enforcement officer that the Orzels' property is a seasonal use dwelling.
For reasons hereinafter stated, the appeal is sustained.
 BACKGROUND
On August 15, 2000,[1] the Old Lyme zoning enforcement officer (ZEO) issued a letter of final determination that the Orzels' property is a "seasonal dwelling as defined under the Old Lyme Zoning Regulations." 1.) The property is located in a C-10 district in the town of Old Lyme.[2]
The Orzels timely appealed the ZEO's decision to the Old Lyme zoning board of appeals (ZBA) on September 13, 2000. At the November 14, 2000 regular meeting of the ZBA, the appeal was continued until January 9, 2001. A public hearing on the appeal was held on January 9, 2001, at which time the ZBA deferred voting until January 16, 2001. At the January 16, 2001 special meeting of the ZBA, the board voted unanimously to uphold the decision of the ZEO that had determined that all units in the building located on the Orzels' property were seasonal. On February 8, 2001, the Orzels commenced this appeal challenging the ZBA's January 16, 2001 decision.[3]
 JURISDICTION
General Statutes § 8-8 (b) provides in pertinent part that "any person aggrieved by any decision of a board may take an appeal to the superior court for the judicial district in which the municipality is located." "A statutory right to appeal may be taken advantage of only by strict compliance with the statutory provisions by which it is created." CT Page 12012 (Internal quotation marks omitted.) Bridgeport Bowl-O-Rama, Inc. v.Zoning Board of Appeals, 195 Conn. 276, 283, 487 A.2d 559 (1985).
Aggrievement
"[P]leading and proof of aggrievement are prerequisites to the trial court's jurisdiction over the subject matter of an administrative appeal." (Internal quotation marks omitted.) Harris v. Zoning Commission,259 Conn. 402, 409, 788 A.2d 1239 (2002). General Statutes § 8-8 (a) (1) provides in relevant part: "[An] `aggrieved person' . . . includes any person owning land that abuts or is within a radius of one hundred feet of any portion of the land involved in the decision of the board." Aggrievement is a factual issue, "and credibility is for the trier of the facts." (Internal quotation marks omitted.) Quarry Knoll II Corp. v.Planning Zoning Commission, 256 Conn. 674, 703, 780 A.2d 1 (2001). An owner of property that is the subject of an application is aggrieved for the purpose of bringing an appeal and a plaintiff may prove aggrievement at the time of trial; Winchester Woods Associates v.Planning Zoning Commission, 219 Conn. 303, 308, 592 A.2d 953
(1991); or "by the production of the original documents or certified copies from the record." (Internal quotation marks omitted.) Quarry KnollII Corp. v. Planning Zoning Commission, supra, 256 Conn. 703.
In the present appeal, the Orzels allege that they are statutorily aggrieved because they are the owners of 84 Hartford Avenue, Old Lyme, the land involved in the decision of the ZBA. A warranty deed for the property at 84 Hartford Avenue, Old Lyme, from Lucille M. Korby to Joseph J. Orzel and Helen J. Orzel dated August 14, 1991 and recorded in Volume 141, page 551 of the Old Lyme Land Records was submitted at the ZBA hearing and marked as Exhibit F. At the time of trial, Joseph Orzel reviewed the warranty deed from the record and testified that he and his wife are the owners and have at all times held the property affected by the ZEO's decision. The Orzels, therefore, have sufficiently alleged and proven aggrievement.
Timeliness and Service of Process
General Statutes § 8-8 (b) provides in relevant part that an "appeal shall be commenced by service of process in accordance with subsections (e) and (f) [now subsections (f) and (g)] of this section within fifteen days from the date that notice of the decision was published as required by the general statutes." Subsection (e) [now subsection (f)] provides that service "shall be made by leaving a true and attested copy of the process with, or at the usual place of abode of, the chairman or clerk of the board, and by leaving a true and CT Page 12013 attested copy with the clerk of the municipality."
The record contains a legal notice of decision published in the January 31, 2001 edition of the Main Street News, a weekly publication of general circulation in the town of Old Lyme. On February 8, 2001, this appeal was commenced by service of process on the town clerk of Old Lyme, Irene A. Carnell, and on the chairperson of the town of Old Lyme zoning board of appeals, June B. Speirs. Accordingly, this court finds that the appeal was commenced in a timely fashion by service of process on the proper parties.
 SCOPE OF REVIEW
"Courts are not to substitute their judgment for that of the board . . . and decisions of local boards will not be disturbed so long as honest judgment has been reasonably and fairly exercised after a full hearing. . . . Upon appeal, the trial court reviews the record before the board to determine whether it has acted fairly or with proper motives or upon valid reasons." (Internal quotation marks omitted.)Bloom v. Zoning Board of Appeals, 233 Conn. 198, 206,658 A.2d 559 (1995). "The Superior Court's scope of review is limited to determining only whether the board's actions were unreasonable, arbitrary or illegal." RR Pool Patio v.Zoning Board of Appeals, 257 Conn. 456, 470, 778 A.2d 61
(2001). "The burden of proof to demonstrate that the board acted improperly is upon the party seeking to overturn the board's decision." (Internal quotation marks omitted.) Francini v. Zoning Board of Appeals,228 Conn. 785, 791, 639 A.2d 519 (1994).
"When a zoning agency has stated its reasons for its actions, a court should not reach beyond those stated purposes to search the record for other reasons supporting the commission's decision. . . . Rather, the court should determine only whether the assigned grounds are reasonably supported by the record and whether they are pertinent to the considerations which the authority was required to apply under the zoning regulations." (Citation omitted; internal quotation marks omitted.)Harris v. Zoning Commission, supra, 259 Conn. 420. "The [decision] must be sustained if even one of the stated reasons is sufficient to support it. . . . [This] applies where the agency has rendered a formal, official, collective statement of reasons for its action." (Internal quotation marks omitted.) Bloom v. Zoning Board of Appeals, supra,233 Conn. 208. "[C]ases in which we have held that the agency rendered a formal, official, collective statement involve circumstances wherein the agency couples its communication of its ultimate decision with express reasons behind that decision." Harris v. Zoning Commission, supra, CT Page 12014259 Conn. 420-21.
In the present case, the minutes of the January 16, 2001 ZBA decisional meeting contained two reasons given by the ZBA for upholding the ZEO's decision: (1) that the "[p]roperty [was] shown to be a non-conforming multi-family use" and (2) "[b]ased on the evidence presented . . . there was no substantiation that the property was designed, intended, constructed or capable of being used in accordance with the full standards for a year-round dwelling at the time when the nonconformity occurred." Accordingly, the ZBA issued a "formal collective statement of reason for its actions." Bloom v. Zoning Board of Appeals, supra,233 Conn. 208.
 DISCUSSION
As set forth above, the ZBA upheld the ZEO's decision that the Orzels' property is a seasonal use dwelling. The ZBA found that the building was a legal nonconforming use because it had been used as a multi-family building prior to the enactment of zoning regulations in the town of Old Lyme. The ZBA found that the evidence presented failed to demonstrate that the property was intended, designed, constructed or capable of being used as a year round dwelling in accordance with the Old Lyme zoning regulations at the time the nonconformity occurred.
The Orzels appeal on the basis that the ZBA acted arbitrarily, illegally and in abuse of its discretion[4] in that its reasons for deciding to deny the Orzels appeal are legally insufficient and not supported by substantial record evidence, and the ZBA's decision illegally restricts a valid nonconforming use in violation of General Statutes § 8-2.[5]
The zoning regulations for the town of Old Lyme were initially enacted in 1957. The Orzels' property became a legally nonconforming multifamily use in 1957, as a result of the enactment of the zoning regulations. Prior to 1992, the regulations defined "seasonal use" and "seasonal dwelling," but the regulations did not prohibit winter use of such properties. In 1992, regulations were adopted amending the nonconformity provisions to prohibit enlargement of nonconforming uses and improvements and prohibiting winter use. In 1995, the regulations were amended again to prohibit conversion of a seasonal dwelling to a year-round dwelling, unless the conversion application had been approved by the appropriate officials under the standards and requirements contained in the regulations.
The 1995 regulations include a provision entitled "Conversion of CT Page 12015 Seasonal Use Dwellings to Year-round Use." Subsection (b) of § 21.2.5 provided that the ZEO had the power to designate properties as seasonal use dwellings and that such designation could be contested by either establishing a preexisting use or demonstrating that the property had been maintained as a single family year-round dwelling prior to January 1, 1992. Specifically, § 21.2.5(b) provides in pertinent part that landowners may contest the designation of their property as a "seasonal use dwelling" by demonstrating that the "dwelling was a lawfully preexisting nonconforming use, or prior to January 1, 1992 was a lawfully existing single detached dwelling for one family, located on a lot with not more than one such dwelling, and that such dwelling was continuously maintained as a year-round use dwelling thereafter." (Emphasis added.) Section 21.2.5(c) further provides that any application seeking to convert a seasonal use dwelling to a year-round use dwelling is subject to certain structural requirements and standards. Pursuant to the regulations, the ZEO determined that the Orzels' property was a "seasonal use dwelling." The Orzels appealed that determination to the ZBA.
The first reason given by the ZBA for its decision was that the property was shown to be a nonconforming multifamily use. The Orzels argue that the ZBA determined that they had a "valid, non-conforming use of the dwelling as a multi-family residence in a single-family zone," but denied their "claim of entitlement to use one of [the] units for periodic overnight stays during the winter months." The Orzels contend that the "establishment of the existence of the multi-family dwelling prior to the adoption of single-family residential use" establishes the right to use that dwelling for all residential purposes and that "[a]ny further restrictions upon the residential use of such a unit must be judged against the time in which a regulation was adopted [that restricted] the scope of residential use of a residential dwelling." They maintain that 1992 and 1995 are the relevant dates in considering their claim to periodic off-season use because the 1992 and 1995 amendments first imposed restrictions limiting the duration of residential use.
The ZBA counters that because the Orzels' property is a multifamily dwelling prohibited by the zoning regulations, it is nonconforming and any off-season use is an expansion or extension of the multifamily nonconformity. The ZBA's initial reason for upholding the decision of the ZEO was that the "[p]roperty [was] shown to be a nonconforming multi-family use." This assigned ground, however, is not "pertinent to the considerations which the authority was required to apply under the zoning regulations." Harris v. Zoning Commission, supra, 259 Conn. 420.
At the hearing, the issue before the ZBA was whether the Orzels, who were contesting the ZEO's designation of their property as a "seasonal CT Page 12016 use dwelling" pursuant to § 21.2.5(b), had established either a preexisting use or established that the property was a lawfully existing year-round, single-family detached dwelling for one family prior to January 1, 1992. The Orzels appealed the ZEO's seasonal use dwelling designation, in pertinent part, on the basis that the "property was used between November 15 and April 1 prior to 1992;" and testimony at the public hearing was offered to demonstrate that periodic winter use of the dwelling was a preexisting nonconforming use of the dwelling.
"The term `nonconforming uses' is often used without consideration as to what aspect of the use of property is nonconforming. . . ." R. Fuller, 9A Connecticut Practice Series: Land Use Law and Practice (1999) § 52.1, p. 548. The fact that the subject property is a nonconformingmultifamily dwelling use is not relevant to whether the Orzels demonstrated they had established a preexisting, nonconforming year-rounduse of that dwelling. Accordingly, the court will proceed to examine the second reason offered by the ZBA in upholding the ZEO's decision.
The second reason given by the ZBA was that "there was no substantiation that the property was designed, intended, constructed or capable of being used in accordance with the full standards for a year-round dwelling at the time when the nonconformity occurred." The Orzels argue that while the ZBA found that their property enjoyed a legally nonconforming multifamily use, it erroneously denied them their right to continue to use the property for occasional overnight stays during the winter months because the ZBA based its decision on the design of the building or its capability of being used during that time, rather than on the actual use of the property for occasional overnight stays in the winter prior to the adoption of regulations that prohibited winter use. The Orzels argue that the ZBA's decision "contravenes Connecticut law regarding nonconforming uses and cannot form a basis for denial of [their appeal]." (Plaintiffs' Brief p. 19.) They argue further that no evidence was produced on the design of the building, but that the design is irrelevant provided an existing dwelling unit was actually used during the winter. The Orzels argue that the issue before the ZBA was whether actual winter use of the property prior to the time the zoning regulations prohibited such use was established.
Citing to Old Lyme zoning regulations § 21.2.5(b), the ZBA contends that the exception to the regulation that prohibits winter use of the property "requires evidence of year-round use from prior to January 1, 1992, . . . [if] the property in question is a single detached dwelling for one family in a lot." The ZBA further maintains that the appeal was "only from the designation of the building as `seasonal'" and, as such, "there is no proper basis for the Board to make any finding with CT Page 12017 respect to the extent to which Mr. Orzel may make limited, periodic use of the building."
Although § 21.2.5(c) provides specific structural and design standards for permitting a seasonal dwelling to be converted to a year-round dwelling, the provision in § 21.2.5(b), permitting a landowner to contest the designation of his property as a "seasonal use dwelling," does not contain requirements for the design of the dwelling or its capability for winter use, and it is not subjected to any such requirements.[6] Section 21.2.5(b) merely provides that a landowner may contest the ZEO's designation by establishing a preexisting use or
that a single family year-round dwelling for one family on a lot was established prior to 1992 and maintained as a year-round use thereafter. By determining that the dwelling did not conform to the full standards for a year round dwelling at the time the nonconformity occurred, the ZBA improperly deviated from the procedure provided in § 21.2.5(b) for contesting the ZEO's designation when it applied its regulations.
"A local board or commission is in the most advantageous position to interpret its own regulations and apply them to the situations before it. . . . Although the position of the municipal land use agency is entitled to some deference . . . the interpretation of provisions in the ordinance is nevertheless a question of law for the court. . . . The court is not bound by the legal interpretation of the ordinance by the [board]." (Citation omitted; internal quotation marks omitted.) Doyen v.Zoning board of Appeals, 67 Conn. App. 597, 603, 789 A.2d 478; cert. denied, 260 Conn. 901, 793 A.2d 1088 (2002).
"[A] local ordinance is a municipal legislative enactment and the same canons of construction which we use in interpreting statutes are applicable to ordinances." (Internal quotation marks omitted.) Id., 604. "[Z]oning regulations and ordinances . . . must be strictly construed and not extended by implication. . . . These regulations must be interpreted in accordance with the ordinary rule of statutory construction that, where the language of the statute is clear and unambiguous, courts cannot by construction read into the statutes provisions which are not clearly stated. . . . [W]ords employed in zoning ordinances are to be interpreted in accord with their natural and usual meaning." (Citations omitted; internal quotation marks omitted.) Schwartz v. Planning Zoning Commission, 208 Conn. 146, 153, 543 A.2d 1339 (1988). "The regulations should not be extended, by implication, beyond their expressed terms. . . . The language of the ordinance is construed so that no clause or provision is considered superfluous, void or insignificant." (Citations omitted; internal quotation marks omitted.)Doyen v. Zoning Board of Appeals, supra, 67 Conn. App. 604-5. "Common CT Page 12018 sense must be used in construing the regulation, and we assume that a rational and reasonable result was intended by the local legislative body." Spero v. Zoning Board of Appeals, 217 Conn. 435, 441, 586 A.2d 590
(1991).
As stated above, § 21.2.5(b) expressly provides the manner in which landowners may contest the ZEO's designation that their property is a "seasonal use dwelling." It does not contain structural standards that must be considered, and it is not subject to any requirements or provisions that contain such standards. Thus, since the regulation neither contains design or structural standards to be used for contesting the ZEO's designation, nor does it encompass any other provisions or subsections that contain such standards, the second reason given by the ZBA that "there was no substantiation that the property was designed, intended, constructed or capable of being used in accordance with the full standards for a year-round dwelling at the time when the nonconformity occurred," is based on considerations that are not pertinent to those required by § 21.2.5(b), and the reason is invalid. See Harris v. Zoning Commission, supra, 259 Conn. 420; Bloom v.Zoning Board of Appeals, supra, 233 Conn. 206.
The ZBA gave improper reasons based on considerations that were not pertinent to the provision of § 21.2.5(b) allowing landowners to contest the ZEO's designation of their property as a "seasonal use dwelling." In doing so, the actions of the ZBA were "unreasonable, arbitrary or illegal." RR Pool Patio v. Zoning Board of Appeals, supra, 257 Conn. 470. The appeal is therefore sustained.
 ______________________ Joseph J. Purtill Judge Trial Referee