ROBERT MISKIMEN ET AL. *v.* HYMAN BIBER ET AL.
(AC 22879)

Foti, Schaller and Mihalakos, Js.

616

Argued April 30—officially released October 19, 2004

*Thomas J. Londregan*, with whom, on the brief, was *Jeffrey T. Londregan*, for the appellants-cross appellees (defendants).

*Lloyd L. Langhammer*, with whom, on the brief, was *Mark E. Block*, for the appellees-cross appellants (plaintiffs).

*Opinion*

SCHALLER, J. The defendants[1] appeal and the plaintiffs[2] cross appeal from the judgment of the trial court rendered in part in favor of the plaintiffs. The plaintiffs had commenced a three count action against the defendants seeking private enforcement of the zoning regulations of the town of Preston and other relief.[3] With

---

[1] The defendants are Hyman Biber, Strawberry Park Resort Campground, Inc., Strawberry Farms, LLC, Strawberry Park, Inc., and Volin, LLC.

[2] The plaintiffs are four homeowners who live adjacent to or near the Strawberry Park campground, which is located in the town of Preston.

[3] As a threshold matter, we address the defendants' argument that the court lacked subject matter jurisdiction. "Any person specifically and materially damaged by a violation of the zoning ordinances which has occurred or is likely to occur on another's land may seek injunctive relief restraining such violation." *Karls* v. *Alexandra Realty Corp.* 179 Conn. 390, 401, 426 A.2d 784 (1980). Although the primary responsibility for enforcing zoning regulations rests with the zoning commission, when a violation results in special damage to an individual, the injured party has a right to seek relief. *Schomer* v. *Shilepsky*, 169 Conn. 186, 194, 363 A.2d 128, (1975). The requirement of special damages serves to differentiate individuals specifically and materially damaged by a zoning ordinance violation from members of the general public who do not have standing. The plaintiffs are not members of the

respect to count one, the court concluded that the use of eighty acres (excess land) in Preston, directly across Pierce Road in Preston from Strawberry Park, was a valid accessory use to a recreational park, except that the use of such land in connection with the sale of music festival tickets to members of the general public was not permitted under the town's zoning regulations. The court resolved count two in favor of the defendants, concluding that the plaintiffs had not established a claim of nuisance. With respect to count three, the court held that the zoning regulations bar the sale of festival tickets to members of the general public.[4] On appeal, the defendants claim that (1) the court improperly determined that the zoning regulations bar the sale of

general public. They are adjacent homeowners who have shown specific and material damage as a result of the violation.

The defendants argue that the present case is moot because of the separate pending public action. In essence, the defendants argue for the application of the exhaustion doctrine. The exhaustion doctrine does not apply. "Under our exhaustion of administrative remedies doctrine, a trial court lacks subject matter jurisdiction over an action that seeks a remedy that could be provided through an administrative proceeding, unless and until that remedy has been sought in the administrative forum. . . . In the absence of exhaustion of that remedy, the action must be dismissed." (Internal quotation marks omitted.) *George* v. *Watertown*, 85 Conn. App. 606, 609–10, 858 A.2d 800 (2004). As previously stated, the plaintiffs allege special damages, and we adhere to the rule that "[i]f the plaintiffs have suffered special damages as alleged in their complaint, the court has equitable jurisdiction and may grant injunctive relief." (Internal quotation marks omitted.) *Reynolds* v. *Soffer*, 183 Conn. 67, 70, 438 A.2d 1163 (1981). "The relief sought and the issues raised are distinctly equitable in nature. To hold that the plaintiffs had an adequate remedy at law which required that they exhaust their administrative remedies before the zoning board of appeals is to ignore the claims made and the nature of the action." (Internal quotation marks omitted.) Id., 69–70. For those reasons, the court did have subject matter jurisdiction.

[4] With respect to count three, the court also determined that the musical festivals conducted on the campground resulted in objectionable noise in violation of the zoning regulations. The defendants subsequently filed a motion to open the judgment and to modify the injunctive relief regarding the objectionable noise regulation. The court granted the motion to open and to modify. Thereafter, we ordered the parties to appear sua sponte. We dismissed as moot the portion of the appeal challenging the injunctive relief as to the noise regulations.

festival tickets to members of the general public, (2) the court improperly concluded that the defendants did not present the special defenses of estoppel and municipal estoppel and (3) the plaintiffs are estopped from enforcing zoning regulations that the town was estopped from enforcing.[5] On cross appeal, the plaintiffs claim that the court improperly concluded that (1) members of the general public should not be barred from Strawberry Park for all purposes and (2) parking on the excess land was a proper accessory use. We agree with the plaintiffs that the court improperly concluded that parking on the excess land was a proper accessory use. In all other respects, however, we affirm the judgment of the trial court.

The following facts and procedural history are relevant to our disposition of these appeals. Strawberry Park is a campground located on the east side of Pierce Road in the town of Preston. The defendants received a special exception for a "recreation campground" from the zoning board of appeals in 1973. In 1974, the campground opened with 104 campsites. It currently has 480 campsites.

Strawberry Park offers a full range of recreational and entertainment activities that run during the spring, summer and fall camping seasons. On several occasions during the camping seasons, Strawberry Park presents what it calls "music festivals," which occur several times a year and are usually two to three day long concert events. The majority of festival tickets are sold

[5] The defendants also claim that the court improperly granted injunctive relief enjoining them from selling music festival tickets to members of the general public. The defendants argue that the court failed to make any finding in its memorandum of decision that the plaintiffs would suffer irreparable harm or special damages from the defendants' alleged violation of the zoning regulations. Because we determine in part I that members of the general public are barred from festivals, we need not address that claim.

to campers. The park, however, also sells tickets to the general public.[6]

When a large number of visitors come to the campground, the excess land west of Pierce Road serves as a parking area for recreational vehicles and as a waiting area for campers and members of the public who are entering or leaving the park. Those critical intake days occur when musical festivals are held during the peak camping season, primarily on Saturdays and Sundays. The excess land is also used for volleyball, walking, horseback riding and other recreational activities.

I

The defendants claim that the court improperly determined that §§ 23.35 and 15.11.18 of the zoning regulations bar the sale of festival tickets to members of the general public. We disagree.

Our review of zoning regulations presents a question of law requiring plenary review. *Doyen* v. *Zoning Board of Appeals*, 67 Conn. App. 597, 604, 789 A.2d 478, cert. denied, 260 Conn. 901, 793 A.2d 1088 (2002). The language in § 23.35 of the zoning regulations provides in relevant part that campgrounds are to be used "for the parking of camper units or the establishing of *overnight* living quarters such as tents or other temporary shelters, and primarily occupied by family groups engaged in travel, recreation or vacation." (Emphasis added.) Section 15.11.16 provides, inter alia, that "the owner and/or operator of any campground shall be responsible for the maintenance of an accurate register at such camp ground in which the following information shall

---

[6] The court and the parties refer to "campers" and "members of the general public" by various names. "Campers" are occasionally referred to as "regular campers" or "overnight campers." "Members of the general public" are often referred to as "nonregular campers," "noncampers," "day campers," "not registered campers" or "outsiders." For the sake of clarity, we will refer to those two categories only as "campers" and "members of the general public."

be recorded: name and permanent address of each occupant of any vehicle, date of arrival and departure." The ordinance also permits accessory uses of the campground. Section 15.11.18 provides: "Permitted as an accessory use to a recreational camp ground and for *camper use only*, but not permitted as a princip[al] use, there may be: a grocery store with grocery and camper provisions and gifts, snack bar, swimming pool, golf course of any kind, tennis courts, recreation pavilion, horseback riding, and any other appropriate activities, even though some of the activities by their nature are performed off the premises, but all activities must originate on premises." (Emphasis added.) A use of campground property that is not permitted by §§ 23.35 and 15.11.18 is a violation of the zoning regulations.

"A court must interpret a statute as written . . . and it is to be considered as a whole, with a view toward reconciling its separate parts in order to render a reasonable overall interpretation. . . . The language of the ordinance is construed so that no clause or provision is considered superfluous, void or insignificant. . . . Common sense must be used in construing the regulation, and we assume that a rational and reasonable result was intended by the local legislative body." (Internal quotation marks omitted.) *Blakeman* v. *Planning & Zoning Commission*, 82 Conn. App. 632, 639, 846 A.2d 950, cert. denied, 270 Conn. 905, 853 A.2d 521 (2004).

The court correctly found that the "main principal and dominant use of Strawberry Park is a recreational campground." The court found that "an increasing number of [members of the general public], use the facility on [a] day-to-day basis, which is a completely different type of use than contemplated by the regulations." The court found that "on several days, 600 to 800 tickets were sold to people who were not campers." To place that number in context, when the camp originally

opened, there were only 104 campsites and no festivals. The court determined that "[i]n addition, to the extent that a music festival is a valid accessory use for a recreational campground under § 15.11.18, such uses may be only offered to campers registered at the campground. Where [members of the general public] are invited, this is not consistent with the definition in § 23.35 and is an illegal violation of the record of the regulations."

Moreover, in a related case decided after the trial court decided the case presently appealed, *Miskemen v. Zoning Board of Appeals*, Superior Court, judicial district of New London, Docket No. 12340, the same trial court upheld a cease and desist order banning music festivals entirely as a nonpermitted use.[7] In *Miskemen*, the trial court determined that "[t]he record established that people purchase ticket bracelets in advance or at the entrance of the campground for the sole purpose of attending the music festival and that the campground treats these individuals as ticket purchasers and not as campers. . . . The record unequivocally establishes that the campground is holding music festivals for campers and [members of the general public] and is, therefore, in violation of zoning regulation § 15.11." The court in that case, accordingly, held that the festivals are not a valid accessory use to the campground because the defendants allow members of the general public to attend.

In the present case, we agree with the court that music festivals can be a proper accessory use provided they are subordinate to the principal use of the property

---

[7] We take judicial notice of the court's decision in *Miskimen* v. *Zoning Board of Appeals*, supra, Superior Court, Docket No. 12340, brought by the present plaintiffs against the zoning board of appeals of the town of Preston. The present private action was brought before the zoning action was commenced. The appeal in the present case was pending before the resolution of the zoning action. We denied certification to appeal with respect to the zoning action.

as a campground. We also agree that music festivals are not a valid accessory use when members of the general public are allowed to attend. Accessory uses are, by definition, uses "located on the same lot, and must be *subordinate* and *customarily incidental* to, the principal use." (Emphasis added.) *D & J Quarry Products, Inc.* v. *Planning & Zoning Commission*, 217 Conn. 447, 456, 585 A.2d 1227 (1991). Attendance by members of the general public at music festivals is not subordinate and customarily incidental to the principal use of the property as a campground. The court properly determined that the "[members of the general public who] use the facility on [a] day-to-day basis" exceeded the dimension of subordinate and incidental use.

Accordingly, the court correctly determined that the sale of music festival tickets to members of the general public constitutes a violation of the zoning regulations.[8]

## II

The defendants claim that the court improperly concluded that they did not present the special defenses of estoppel and municipal estoppel. Specifically, the defendants argue that the court improperly concluded that they pursued only the special defenses of unclean hands and laches. We disagree.

The defendants filed a motion for articulation with respect to the court's ruling on its special defenses of estoppel and municipal estoppel. They specifically requested that the court articulate its decision in the following areas: "1. Whether the defendants proved the elements of municipal estoppel. 2. Whether the plaintiffs would be estopped from enforcing zoning regulations where the town and its officials were estopped

---

[8] Nothing in this opinion precludes the defendants from properly applying for a special permit under § 15.13 of the zoning regulations, which is entitled, "Commercial Recreation Facilities," to conduct musical festivals that are open to the general public.

from enforcing the zoning regulations." On October 16, 2003, the court denied the defendants' motion for articulation. The defendants did not file a motion for review of the court's denial of their request for articulation.

"[W]here a party is dissatisfied with the trial court's response to a motion for articulation, he may, and indeed under appropriate circumstances he must, seek immediate appeal . . . to this court via the motion for review. . . . Our rules provide a procedure for clarifying the record when rulings of the trial court are unclear. . . . In addition, our rules provide a procedure for reviewing the adequacy of the trial court's response to a motion for articulation. . . .

"Even if we assume the validity of this claim, proper utilization of the motion for articulation [and the motion for review] serves to dispel any such ambiguity by clarifying the factual and legal basis upon which the trial court rendered its decision, thereby sharpening the issues on appeal. . . . The burden of securing an adequate record for appellate review of an issue . . . rests with the . . . appellant. . . . Because it is the . . . appellant's responsibility to provide this court with an adequate record for review . . . we will not remand a case to correct a deficiency the . . . appellant should have remedied. . . . Without an adequate record, we can only speculate as to the basis for the trial court's decision. Our role is not to guess at possibilities, but to review claims based on a complete factual record developed by a trial court." (Citations omitted; internal quotation marks omitted.) *Lambert* v. *Donahue,* 78 Conn. App. 493, 510–11, 827 A.2d 729 (2003). The defendants failed to file a motion for review of the court's denial of their motion for articulation and have foisted on this court a claim without a record. Accordingly, we decline to address the question of whether the court improperly concluded that the defendants did not pre-

sent the special defenses of estoppel and municipal estoppel.

## III

The defendants claim that the plaintiffs are estopped from enforcing the same zoning regulations that the town was estopped from enforcing. Because the defendants have failed to provide an adequate record on the underlying claim of whether the town was estopped from enforcing the zoning regulations, we are unable to determine whether the plaintiffs should be estopped as well. Accordingly, we decline to review the defendants' claim.

## IV

The plaintiffs, on cross appeal, claim that the court improperly determined that the zoning ordinance does *not* bar members of the general public from *all* activities. We do not address that claim because the issue was not decided by the trial court.

"The theory upon which a case is tried in the trial court cannot be changed on review, and an issue not presented to or considered by the trial court cannot be raised for the first time on review. Moreover, an appellate court should not consider different theories or new questions if proof might have been offered to refute or overcome them had they been presented at trial." *Ritcher* v. *Childers*, 2 Conn. App. 315, 318, 478 A.2d 613 (1984).

The issue of whether the zoning ordinance bars members of the general public from all activities was not presented to or ruled on by the trial court. The court's articulation states: "The trial court *clearly* ruled that sale of tickets to [members of the general public] for music festivals violated the zoning regulations. The court did not order [campers] barred for all activities." (Emphasis added.) That statement in the court's articu-

lation sets forth what the court did and *did not* rule on. Because that issue was not ruled on by the court, we cannot review the issue for the first time on appeal.

V

The plaintiffs claim on cross appeal that the court improperly concluded that parking on the excess land was a proper accessory use. Because we must review the zoning ordinance, our review is plenary. *Doyen* v. *Zoning Board of Appeals*, supra, 67 Conn. App. 604.

The court determined that "[t]he parking of recreational vehicles, automobiles and recreational activities west of Pierce Road are valid accessory uses to a recreational campground." The court found that there was no special exception for the excess land and made its determination by focusing on whether the activity on the excess land was a proper accessory use. The court stated that it would be "customary for parking and recreation users to be incidental to a campground, and the defendants offered testimony that such uses commonly accompany campgrounds. Without Strawberry Park, the accessory uses would not occur. Therefore, the uses west of Pierce Road are valid accessory uses." The court, however, failed to address the threshold question of whether the excess land west of Pierce Road *could properly be* considered for an accessory use. Section § 23.2 defines an accessory use as "a use or a building customarily incidental and subordinate to the principal use or building and located on the same lot as such principal use or building, or on a contiguous lot under the same ownership." Because the excess land is located on the west side of Pierce Road, and Strawberry Park is on the east side, it cannot be disputed that the excess land is not "located on the same lot" or "a contiguous lot under the same ownership."[9]

---

[9] Contiguous is defined in relevant part as: "Literally, in actual contact, an actual touching. . . ." Ballentine's Law Dictionary (3d Ed. 1969).

On the basis of the specific language of the zoning regulations, the excess land west of Pierce Road cannot be considered for accessory use. Our Supreme Court in *Adley* v. *Paier*, 148 Conn. 84, 86, 167 A.2d 449 (1961), held that if parking is to be considered an accessory use, "it can only be so if it was on the same lot as the principal use." Accordingly, the court improperly determined that parking on the excess land was a proper accessory use.

On the defendants' appeal, the judgment is affirmed. On the plaintiffs' cross appeal, the judgment is reversed only as to the determination that parking on the excess land was a proper accessory use and the case is remanded with direction to render judgment enjoining the defendants from allowing such use.

In this opinion the other judges concurred.