CONNECTICUT PROPERTIES TRI-TOWN PLAZA, LLC
*v.* SEYMOUR CINEMA, INC.
(AC 24264)

Foti, Schaller and Peters, Js.

---

Argued June 4—officially released August 17, 2004

*Lloyd L. Langhammer*, with whom, on the brief, was *Mark E. Block*, for the appellant-cross appellee (plaintiff).

*Craig S. Taschner*, for the appellee-cross appellant (defendant).

*Opinion*

PETERS, J. This appeal arises out of a contractual dispute between the owner of a shopping center and one of its tenants about costs associated with the construction of a retaining wall to the rear of the tenant's movie theater. The owner maintains that the tenant bore this obligation because of two provisions in the lease, one requiring the tenant to comply with local land use regulations and another requiring the tenant to pay all costs of construction associated with the

movie theater. The tenant maintains that the lease required the owner to assume the costs of the retaining wall required by the town as well as of an earlier smaller retaining wall constructed by the tenant. The trial court held that neither party had a valid claim against the other. Both parties have appealed. We affirm the judgment of the court.

The plaintiff, Connecticut Properties Tri-Town Plaza, LLC, filed a three count complaint[1] in which it sought damages from the defendant, Seymour Cinema, Inc., for breach of a lease that allegedly required the defendant to pay for the construction of a retaining wall in conformity with land use regulations of the town of Seymour (town). The defendant denied liability and filed a counterclaim for the cost of constructing a smaller, prior retaining wall.

The trial court held that the lease did not require the defendant to erect or to pay for a retaining wall at any time. Accordingly, the plaintiff was not entitled to damages, and the defendant, having acted as a volunteer in building the prior retaining wall, was not entitled to reimbursement. On appeal to this court, each of the parties asks us to overturn some part of the judgment of the trial court.

The underlying facts are largely stipulated. On April 16, 1997, the plaintiff and the defendant executed a letter of intent for a ground lease of approximately 29,300 square feet of space on which the defendant was to construct a movie theater. Thereafter, the town planning and zoning commission (commission) approved a site development plan for this construction. On July 2, 1997, the plaintiff and the defendant entered into the ground lease. The lease subjected the demised

---

[1] The three counts were breach of contract, unjust enrichment and indemnification. In this appeal, the plaintiff apparently is pursuing only the first and third counts.

premises to all town laws, ordinances, rules and regulations.

Although the site development plan did not call for the construction of a retaining wall to the rear of the movie theater, the defendant constructed a retaining wall (initial retaining wall) in order to bring a fire access road into compliance with the town fire code. After receiving approval from the town fire inspector, the movie theater opened for business on or about May 20, 1998.

Some time later, the town became dissatisfied with the initial retaining wall. It so informed both the plaintiff and the defendant. Although the town did not pursue any enforcement action against the defendant, it required the plaintiff to build a new, higher retaining wall (higher retaining wall) as a condition for obtaining approval for the construction of a new building at the shopping center. The plaintiff constructed the higher retaining wall and, in the present litigation, appeals from the trial court's rejection of its claim that the defendant must pay the costs associated with this construction.

I

The issues raised by the plaintiff's appeal are twofold. The plaintiff maintains that the trial court improperly decided that (1) the defendant had fulfilled its lease obligation to comply with town planning and zoning regulations and (2) the lease did not obligate the defendant to build the higher retaining wall required by the town. We are not persuaded.

A

The trial court rejected the plaintiff's claim that the defendant was obligated to pay for the construction of the higher retaining wall because the defendant, allegedly in breach of its contract, had failed to comply with

the unambiguous terms of the lease requiring the movie theater to comply with all ordinances, laws, rules and regulations of the town. Although the town permitted the movie theater to operate without the higher retaining wall, the plaintiff maintains that the defendant had a continuing obligation to undertake the construction once the town insisted that it be done. The court found, however, that the higher retaining wall "was solely a precondition and requirement of the plaintiff's obtaining approval for the expansion of retail space" at the shopping center. Accordingly, the trial court found, by a preponderance of the evidence, that "the defendant, in constructing the [movie theater], met all of the requirements of the town . . . ."

The plaintiff disagrees with the trial court's ruling. Its disagreement does not turn on a question of contract interpretation, because the court did not question the defendant's contractual obligation to comply with applicable land use regulations. Instead, the plaintiff disagrees with the court's finding of fact that the defendant had fulfilled this obligation. We review such a finding of fact by applying the clearly erroneous standard. Practice Book § 60-5; see also *Pandolphe's Auto Parts, Inc.* v. *Manchester*, 181 Conn. 217, 221–22, 435 A.2d 24 (1980).

The crux of the plaintiff's disagreement with the court's finding is its claim that the defendant bore responsibility for constructing the higher retaining wall to conform with town regulations even though the town chose not to enforce this obligation. In the plaintiff's view, it is irrelevant that the town did not insist on the required construction until the plaintiff sought approval for the construction of an additional building.

The record at trial, however, supports the findings of the trial court. The commission originally approved a site development plan for the construction of the

movie theater *without* requiring construction of a retaining wall to the rear of the theater. The defendant constructed the initial retaining wall to facilitate the construction of a fire access road required by the town fire code.

It was only after the opening of the movie theater that the town became dissatisfied with the initial retaining wall. Although the town so informed both the plaintiff and the defendant, it never pursued any enforcement action against the defendant. Instead, the town threatened not to issue a permanent certificate of occupancy for the movie theater unless the initial retaining wall was replaced with a higher one. The town did not act on this threat.[2] It did, however, withhold approval for a new building at the shopping center until the plaintiff agreed to build the new, higher retaining wall.[3] The trial court found that the higher retaining wall "was solely a precondition and requirement of the plaintiff's obtaining approval for the expansion of retail space" at the shopping center. The plaintiff constructed the higher retaining wall.

In view of this factual record, the trial court's ultimate finding that the defendant had complied with town land use regulations was not clearly erroneous. The defendant's construction of the initial retaining wall may have

---

[2] The following colloquy, which occurred between counsel for the defendant and the town engineer, is illuminating:

"[The Defendant's Counsel]: Okay. Now, did you take any action to stop the movie theater from operating?

"[The Witness]: No.

"[The Defendant's Counsel]: Did you suggest to a town zoning enforcement officer that they should shut the theater down?

"[The Witness]: I don't believe so."

[3] The following exchange between the defendant's counsel and the town planner supports this finding:

"[The Defendant's Counsel]: You used [the plaintiff's] pending approval for his new building to get the wall repaired and built the way you wanted it?

"[The Witness]: Well, we used that, and we also said that we would not authorize a final [certificate of occupancy] until it was corrected."

alerted the town to the contours of the landscape and to the desirability of measures that would protect the landscape from the consequences of intensive use of the plaintiff's property. Nonetheless, the town decided that the plaintiff as landowner rather than the defendant as tenant had the obligation to build the higher retaining wall. Indeed, in its own brief, the plaintiff cites General Statutes § 8-12 for the proposition that it is the property owner that is ultimately responsible for compliance with land use regulations. Accordingly, we are unpersuaded by the plaintiff's first claim.

B

Even if the defendant had no regulatory duty to build the higher retaining wall, the plaintiff claims that the defendant had a contractual duty to do so. The plaintiff contends that the ground lease unambiguously required the defendant to bear all the costs of construction relating to the movie theater and that this obligation included construction of the retaining wall that the town required to be built.

The trial court rejected the plaintiff's claim that the lease was unambiguous. It agreed with the plaintiff that the lease clearly obligated the defendant to pay the costs of "everything directly related to the construction of the [movie theater]" within the foundation of the building. It disagreed with the plaintiff, however, that the defendant also had responsibility for the construction of a retaining wall outside of the movie theater's foundation. On that question, it held that the lease was ambiguous because it nowhere expressly required the defendant to pay the costs of "everything directly related to the construction of the [movie theater]" except within the foundation of the building. Furthermore, the court resolved this ambiguity in favor of the defendant.

The plaintiff maintains that the court misread the lease. As a general matter, to the extent that the plaintiff challenges the court's interpretation of unambiguous provisions of the lease, the determination of what the parties intended is a question of law that is entitled to plenary review. *Tallmadge Bros., Inc.* v. *Iroquois Gas Transmission System, L.P.*, 252 Conn. 479, 495, 746 A.2d 1277 (2000); see *Del Core* v. *Mohican Historic Housing Associates*, 81 Conn. App. 120, 121–22, 837 A.2d 902 (2004). To the extent that the plaintiff challenges the court's interpretation of provisions in the lease that are ambiguous, however, the court's decision is a finding of fact that is reversible only if it was clearly erroneous. See *Bijur* v. *Bijur*, 79 Conn. App. 752, 759, 831 A.2d 824 (2003).

In support of its argument that the lease was unambiguous, the plaintiff emphasizes four provisions of the lease: article II, paragraph 2 (a);[4] article III, paragraph 3;[5] article XII, paragraph 2;[6] and article XII, paragraph 4.[7] The plaintiff acknowledges that none of these provi-

---

[4] Article II, paragraph 2 (a), of the lease provides in relevant part: "Lessee shall . . . obtain, at Lessee's sole cost and expense all permits and approvals for construction and operation of a 2000 seat movie theater, together with parking for not less than 600 cars, within 120 days from the date of execution of this Lease . . . ."

[5] Article III, paragraph 3, of the lease provides in relevant part: "Accordingly, all costs, expenses and obligations of every kind or nature, whatsoever, relating to the Demised Premises, or any improvements thereon, which may arise or become due during the terms of this Lease, and except as otherwise provided in the Lease shall be paid by the Lessee . . . ."

[6] Article XII, paragraph 2, of the lease provides in relevant part: "Lessee covenants and agrees that the building must be constructed and paid for wholly at the expense of Lessee, except that the Lessee may make use of the existing foundation located on the Demised Premises . . . ."

[7] The plaintiff draws attention to the following two portions of article XII, paragraph 4: (1) "Lessee shall, at Lessee's sole expense, prepare plans and specifications for any new building or improvements to be erected on the Demised Premises which shall provide for a commercial building as shown on said Plan"; and (2) "Once the Lessee commences construction of any building, or improvements on the premises, Lessee shall, at Lessee's sole expense, commence and shall thereafter diligently prosecute to completion

sions expressly requires the defendant to construct or pay for a retaining wall *behind* the movie theater. Nonetheless, the plaintiff asserts that such an obligation can and should be implied from a conjoint reading of all the provisions comprising the lease. We are not persuaded.

Connecticut law requires an issue of contract interpretation to be resolved by reading the contract in its entirety, "with each provision read in light of the other provisions . . . and every provision [to] be given effect if it is possible to do so." (Citation omitted.) *United Illuminating Co.* v. *Wisvest-Connecticut, LLC*, 259 Conn. 665, 671, 791 A.2d 546 (2002). "Where the language of the contract is clear and unambiguous, the contract is to be given effect according to its terms. A court will not torture words to import ambiguity where the ordinary meaning leaves no room for ambiguity . . . . Similarly, any ambiguity in a contract must emanate from the language used in the contract rather than from one party's subjective perception of the terms."[8] (Internal quotation marks omitted.) *Niehaus* v. *Cowles Business Media, Inc.*, 263 Conn. 178, 188–89, 819 A.2d 765 (2003).

It is undisputed that, within the foundation of its building, the defendant was required to pay all construction costs. We agree with the trial court that the lease is ambiguous about the defendant's responsibility for any other costs.

We acknowledge that the lease contains some provisions that require the defendant to pay for costs outside of the foundation of its movie theater. For example, although the lease requires the plaintiff, not the defen-

---

the erection of any improvements on the premises in accordance with such plans and specification[s]."

[8] A word or phrase is ambiguous when it is "capable of being interpreted by reasonably well-informed persons in either of two or more senses." (Internal quotation marks omitted.) *Kremenitzer* v. *Kremenitzer*, 81 Conn. App. 135, 140, 838 A.2d 1026 (2004).

dant, to maintain the common areas and to pay for certain capital improvements,[9] it also requires the defendant to pay a proportionate share of operating costs relating to the common areas. The common areas are located outside the foundation of the movie theater. Likewise, article XV of the lease requires the defendant to pay for the installation of a French drain, which also is located outside the foundation of the building.

The question is whether these provisions state the exceptions or the rule. Other provisions in the lease suggest the former. The defendant's general responsibility to pay costs and expenses is limited to costs and expenses "relating to" the demised premises. Although the lease does not define the phrase "relating to,"[10] it describes the "demised premises" as extending no further than the foundation of the movie theater. Likewise, the lease limits the defendant's responsibility for the maintenance of utilities to those "that may cross over, under, or are part of the Demised Premises." During the construction of the movie theater, the defendant was permitted to use only the demised premises. Finally, the defendant's authority to prepare plans and specifications for any new buildings and improvements is limited to improvements of the demised premises.

At the very least, these provisions support the trial court's decision that the lease did not unambiguously require the defendant to assume fiscal responsibility for the construction of a retaining wall outside of the foundation of its building. The court, therefore, properly concluded that the plaintiff could not prevail on its claim of law.

---

[9] The listed capital improvements did not include the construction of a retaining wall.

[10] Additionally, neither party claims the phrase "relating to" possesses any significance either as a common usage of trade or as a term of art frequently used in commercial leases.

We turn then to the question whether the trial court correctly found, as a matter of fact, that the plaintiff had failed to prove that the lease imposed the duty to construct the higher retaining wall on the defendant. The court based its decision on two grounds. First, it found that the plaintiff had drafted the lease and, therefore, any ambiguities in the lease should be construed in favor of the defendant. Second, it found that the terms of the lease limited the responsibility of the defendant to the costs of constructing the movie theater itself. The plaintiff maintains that each of these findings was clearly erroneous. We disagree.

The plaintiff claims that the trial court erroneously found that the plaintiff was the draftsman of the lease. The plaintiff does not dispute the proposition that, having found the lease to be ambiguous, the court had the authority to construe ambiguities in favor of the defendant. *Rund* v. *Melillo*, 63 Conn. App. 216, 222, 772 A.2d 774 (2001). The plaintiff does dispute the court's factual finding that the plaintiff was the draftsman in this case. The plaintiff maintains that the court mistakenly disregarded evidence that the plaintiff and the defendant, each assisted by counsel, had engaged in negotiations prior to the execution of the lease. In support of this argument, the plaintiff directs our attention to the defendant's posttrial memorandum, which states that the parties engaged in negotiations before entering into the lease agreement.

The plaintiff's description of the pleadings is accurate. Further, in addition to the lease agreement initially prepared by the plaintiff's counsel, the record contains a letter of intent signed by both parties.

The record does not explain, however, the extent of the parties' negotiations about the terms of the lease initially drafted by the plaintiff. Negotiations might have centered on rental fees or on the number of years during

which the ground lease would be operative. Negotiations might equally well have considered terms relating to the obligations undertaken by the plaintiff rather than those undertaken by the defendant. The record does not enable us to fill this evidentiary gap.[11]

Nonetheless, the trial court made a factual finding assigning the dispositive role in the contract negotiations to the plaintiff. The plaintiff had the opportunity to clarify the basis for the court's finding by filing a motion for articulation. It did not do so. Without an articulation, we have no basis for deciding that the court's finding was clearly erroneous. It was the plaintiff's burden, as the appellant, to provide an adequate record for review. See Practice Book § 61-10. "It is . . . the responsibility of the appellant to move for an articulation or rectification of the record where the trial court has failed to state the basis of a decision . . . to clarify the legal basis of a ruling . . . or to ask the trial judge to rule on an overlooked matter." (Internal quotation marks omitted.) *State* v. *Collic*, 55 Conn. App. 196, 209, 738 A.2d 1133 (1999).

The trial court also found, as a matter of fact, that the plaintiff had not met its burden of proof to establish that the ground lease imposed the duty on the defendant to pay the costs of "everything related to the construction of the [movie theater] except inside the footprint of the building." This finding, too, was not clearly erroneous. As earlier noted, the lease repeatedly described the defendant's obligations by reference to "the demised premises." Although the plaintiff points to these same lease provisions as a basis for holding the defendant liable, we agree with the court's holding to the contrary.

---

[11] The plaintiff failed to produce at trial any evidence concerning the total number or duration of negotiations engaged in by both parties, the content of those discussions or any documentary evidence of prior drafts, if any.

We conclude, therefore, that the trial court properly resolved all of the issues raised by the plaintiff at trial and on this appeal. The ground lease did not obligate the defendant to construct a retaining wall outside of the premises occupied by the movie theater.

II

The defendant contended in its counterclaim at trial, and now contends in its cross appeal, that the ground lease required the plaintiff to repay the defendant for the costs that it incurred in constructing the initial retaining wall outside the foundation of the movie theater. According to the defendant, once the trial court held that the plaintiff was obligated to pay for the higher retaining wall, the court also was required to hold the plaintiff liable for the costs of constructing the initial retaining wall. The court disagreed with the defendant's claim and so do we.

The court held that "[w]ith respect to the counterclaim, the court finds that the defendant performed the work in constructing the initial wall on its own. It had no obligation to do so. Neither did it have approval by the plaintiff to construct such a wall. Therefore, it has no right to be reimbursed for that wall by the plaintiff."

The defendant maintains that the lease should be read broadly. It views the lease to have defined the obligation of the defendant to the plaintiff, in unambiguous fashion, as limited to work inside the foundation of the movie theater. From this proposition, it infers that the lease, also unambiguously, included a symmetric obligation for the plaintiff to pay for work outside the foundation of the movie theater. The defendant's claim presents a question of law that is entitled to plenary review. *Murphy, Inc.* v. *Remodeling, Etc., Inc.*, 62 Conn. App. 517, 522, 772 A.2d 154, cert. denied, 256 Conn. 916, 773 A.2d 945 (2001).

We have already noted our agreement with the trial court's conclusion that the ground lease was not unambiguous with respect to the defendant's obligations to the plaintiff. In significant part, we did so because of the absence of provisions in the lease that would impose liability beyond the foundation of the defendant's movie theater.

The same reasoning applies to the counterclaim. The defendant has not cited any provision in the lease that requires the plaintiff to assume responsibility for any and all costs of construction outside the foundation of the movie theater. The defendant relies instead on the testimony of two of its witnesses expressing their view that the plaintiff had such liability. The court was not required to find that this testimony filled a gap in the lease. Indeed, reliance on testimony for the interpretation of the lease is inconsistent with the defendant's claim that the lease is unambiguous.

We conclude, therefore, that the trial court properly determined as a matter of law that the plaintiff owed no obligation under the lease to compensate the defendant for constructing the initial retaining wall. The defendant may well have had a good faith belief that it was entitled to reimbursement for any costs that it incurred that were not related to the construction of the movie theater itself. Its good faith belief, however, does not convert its status as a volunteer into that of a creditor.

In sum, we are persuaded that the trial court properly concluded that neither the plaintiff as owner nor the defendant as tenant had proved a breach of their ground lease. Accordingly, the court properly denied the parties' claims for relief.

The judgment is affirmed.

In this opinion the other judges concurred.