LORRAINE M. PHILLIPS *v.* RUSSELL B. PHILLIPS
(AC 27306)

Flynn, C. J., and DiPentima and Pellegrino, Js.

Argued January 8—officially released May 8, 2007

*Edward Muska,* for the appellant (defendant).

*Kevin M. O'Brien,* for the appellee (plaintiff).

### Opinion

FLYNN, C. J. The defendant, Russell B. Phillips, appeals from the judgment of the trial court awarding damages in the amount of $132,863.89 in favor of the plaintiff, Lorraine M. Phillips. On appeal, the defendant claims that the court improperly (1) found against him on his special defense of misrepresentation and (2) construed the term "income" to mean "gross income." We affirm the judgment of the trial court.

The following facts, as found by the court, are relevant to the issues on appeal. The defendant "had worked with and for his father in his father's automobile repair and towing business on and off throughout a period of about seventeen years . . . . In June, 1999, [the defendant] took over the management and operation of the garage, Phillips Repair, owned by his father, David Phillips. David Phillips had suffered health problems and had seriously neglected the business, resulting in unpaid taxes, unpaid creditors and allegedly fraudulent tax filings. The affairs of the garage were in a state of significant disarray, with imminent foreclosure due to long overdue unpaid taxes, closing down of the business, and state officials' seizure of business records and computers. David Phillips asked [the defendant] to take over the business, and, after he agreed to do so, [the defendant] took immediate steps to negotiate payment arrangements with the numerous creditors. He was able to avoid the impending foreclosure. He used his own money to commence payments on delinquent taxes and overdue debts. He commenced efforts to manage the garage so as to get it running efficiently. [The defendant also] quit his full-time job in order to take over these responsibilities.

"In November, 1999, [the defendant] approached his father and his father's wife, the plaintiff, Lorraine M. Phillips, indicating to them that he could not continue his efforts unless he had some security that the property would not be sold out from under him. In response thereto, David Phillips and [the plaintiff] agreed to convey the real estate on which the garage was situated to [the defendant] and that was accomplished by means of a warranty deed executed on December 21, 1999. The real estate conveyed includes the lot on which the garage is situated at 212 Hartford Turnpike, Tolland, Connecticut, and an adjoining address—9 Kingsbury Avenue, which shares the septic system and well. In

addition to the garage on the 212 Hartford Turnpike address, there is also a six room house on the property (the 9 Kingsbury Avenue address). This parcel of land had been purchased by [the plaintiff] and David Phillips in 1989 for $350,000.

"On December 21, 1999, [the plaintiff], David Phillips, and [the defendant] met at the office of attorney [F. Joseph] Paradiso, who had been retained by [the defendant]. Attorney Paradiso had prepared the warranty deed referred to [previously], and [the plaintiff] and David Phillips signed the deed. At this time, there still remained a balance of approximately $200,000 on the mortgage on the garage property, and the parties agreed that, as part of his assumption of the garage responsibilities, [the defendant would take] over the payments of that mortgage obligation. Just as they were concluding their discussion at the lawyer's office, [the plaintiff] asked [the defendant] if, as part of the deal, he was also planning to continue to pay the second mortgage on her house at 39 Reed Street (apparently, this, as well as many other personal bills, had previously been paid directly through the garage). [The defendant] responded in the affirmative. Either at [the plaintiff's] request or attorney Paradiso's suggestion that this agreement should be commemorated in writing, attorney Paradiso drafted another document, handwritten on lined yellow paper, signed by the parties, stating: 'As part consideration for the purchase of 212 Hartford Turnpike Tolland, I, [the defendant] do agree to pay the mortgage at 39 Reed Street, Rockville, CT from the income at Phillips Repair which has a balance of approximately $115,000.'

"[The defendant] continued to run the garage. At the time [the defendant] took over the property, there were tenants in the residence at the 9 Kingsbury Avenue property, but they had not paid rent for some time and an eviction had been commenced by David Phillips.

Because of problems with the eviction filings and the tenants' continued occupancy despite David Phillips' repeated reporting to [the defendant] that the tenants were leaving 'this month,' the property was not vacated for some time and no rent was coming in. After these tenants finally left, [the defendant] did the significant cleaning of the 'trashed' premises that was necessary, gutted the house and completed needed [renovations]. Thereafter, the property was rented through [§ 8 of the National Housing Act, 42 U.S.C. § 1437f], and [the defendant] permitted his father to receive those rentals.

"In the fall of 2000, [the defendant] reorganized the business, and changed the status of the garage from 'Phillips, Repair, Inc.,' to 'Phillips Auto Repair, L.L.C.' David Phillips died on May 21, 2001. . . .

"In approximately September, 2001, [the defendant] stopped paying the mortgage on [the plaintiff's] 39 Reed Street property. At that time [the plaintiff and the defendant] were having a dispute as to the use and ownership of a truck, and they apparently were not able to agree on many other issues. . . . [The plaintiff began making] the mortgage payments on the 39 Reed Street property after [the defendant] stopped making payments. She made the payments, refinanced and then paid off that mortgage."

The plaintiff sought, among other things, the reimbursement for the mortgage payments she had made on the 39 Reed Street property from October, 2001, as well as the payoff of the mortgage on that property, plus interest. The defendant claimed, via a special defense, that his agreement to pay the mortgage on the 39 Reed Street property was invalid because it had been procured by fraud and misrepresentation in that the plaintiff and David Phillips had told him that the proceeds of that mortgage had been used solely to pay expenses of the garage. Additionally, the defendant had

argued that the agreement to pay the mortgage from the "income" of the garage, as stated in the written agreement, referred to the "net income" and not the "gross income" of the garage. The court, concluding that there had been no misrepresentation and that the term "income" referred to "gross income," found in favor of the plaintiff on this count of the complaint and awarded her $132,863.89. This appeal followed.

I

On appeal, the defendant first claims that the court improperly concluded that there was no misrepresentation that fraudulently induced him to assume the mortgage payment of the 39 Reed Street property. The defendant argues that the evidence demonstrates that he fraudulently was led to believe that the mortgage proceeds from the 39 Reed Street property were used solely for business purposes. He contends that this evidence was not contradicted and that, therefore, the court's finding that he was not fraudulently induced into paying this mortgage by the misrepresentations of David Phillips and the plaintiff is contrary to the evidence and is clearly erroneous. We are not persuaded.

"Fraud and misrepresentation cannot be easily defined because they can be accomplished in so many different ways. They present, however, issues of fact." (Internal quotation marks omitted.) *Harold Cohn & Co.* v. *Harco International, LLC*, 72 Conn. App. 43, 50–51, 804 A.2d 218, cert. denied, 262 Conn. 903, 810 A.2d 269 (2002). "The party claiming fraud . . . has the burden of proof. . . . Whether that burden has been met is a question of fact that will not be overturned unless it is clearly erroneous. . . . A court's determination is clearly erroneous only in cases in which the record contains no evidence to support it, or in cases in which there is evidence, but the reviewing court is left with the definite and firm conviction that a mistake has been

made." (Internal quotation marks omitted.) *Duplissie* v. *Devino*, 96 Conn. App. 673, 680–81, 902 A.2d 30, cert. denied, 280 Conn. 916, 908 A.2d 536 (2006).

"The essential elements of a cause of action in [fraudulent misrepresentation] are: (1) a false representation was made as a statement of fact; (2) it was untrue and known to be untrue by the party making it; (3) it was made to induce the other party to act upon it; and (4) the other party did so act upon the false representation to his injury." (Internal quotation marks omitted.) *Cadle Co.* v. *Ginsberg*, 70 Conn. App. 748, 769, 802 A.2d 137, cert. denied, 262 Conn. 905, 810 A.2d 271 (2002).

In its memorandum of decision, the court specifically found: "The agreement as to payment of the 39 Reed Street property is binding on [the defendant,] the court having made no finding of misrepresentation inducing this obligation." When requested by the defendant to articulate this finding in more detail, the court offered the following articulation: "The court did not find the evidence of misrepresentation credible."[1] No further

---

[1] In his appellate brief, the defendant also claims that the court improperly failed to explain the basis for its conclusion: "There was no analysis of the law of misrepresentation, no explanation of the facts on which this legal conclusion was based, and no explanation of how the evidence supported these facts. . . . In short, there is no way for [the appellate] court to know whether the decision of the trial court was legally and logically correct, what the facts were that supported this legal conclusion, and what evidence was used to support the facts." The defendant requests that we "remand this case to the trial court to make findings on the issue of fraud and to set forth the factual basis of its findings, or, in the alternative, order a new trial if the trial court is unable to do so."

It is axiomatic that the appellant has the responsibility of providing this court with an adequate record for review. See Practice Book § 61-10; *Narumanchi* v. *DeStefano*, 89 Conn. App. 807, 815, 875 A.2d 71 (2005). "[W]here a party is dissatisfied with the trial court's response to a motion for articulation, he may, and indeed under appropriate circumstances he must, seek immediate appeal of the rectification memorandum to this court via the motion for review." (Internal quotation marks omitted.) *Highgate Condominium Assn.* v. *Watertown Fire District*, 210 Conn. 6, 21, 553 A.2d 1126 (1989). "[P]roper utilization of the motion for articulation [and the motion for review] serves to dispel . . . ambiguity by clarifying the factual and legal

articulation was sought, nor was a motion for review requested.

The defendant claims that he proved all of the elements of his special defense of fraudulent misrepresentation: (1) the plaintiff and David Phillips told him that the proceeds of the 39 Reed Street mortgage solely were used to pay business expenses; (2) this statement was untrue, and the plaintiff and David Phillips knew it was untrue; (3) the plaintiff and David Phillips made this misrepresentation to induce the defendant into agreeing to pay the mortgage; and (4) the defendant signed the agreement because he was told that all of the money had been used for the business. He argues that the only factual dispute on this issue was "whether or not the representations were made that the 39 Reed Street mortgage [had been] used solely to pay business debt." He then refers to his own trial testimony and argues that his testimony was not contradicted and that, in essence, it, therefore, should be conclusive.

In this case, however, the court found the defendant's testimony concerning the issue of misrepresentation to be incredible. In reviewing the record, including the trial transcripts, we have noticed several instances in which the defendant provided contradictory testimony on this issue. He also testified that he did not believe

basis upon which the trial court rendered its decision, thereby sharpening the issues on appeal. . . . The burden of securing an adequate record for appellate review of an issue . . . rests with the . . . appellant. . . . Because it is the . . . appellant's responsibility to provide this court with an adequate record for review . . . we will not remand a case to correct a deficiency the . . . appellant should have remedied." (Internal quotation marks omitted.) *Lambert* v. *Donahue*, 78 Conn. App. 493, 510, 827 A.2d 729 (2003). In this case, although recognizing the limited usefulness of the court's articulation of this matter, the defendant did not file a motion for further articulation with the trial court, nor did he file a motion for review with this court pursuant to Practice Book § 66-7. Concluding, however, that the court set forth sufficient findings and conclusions, we will review the claim on the basis of the record before us.

his father when his father told him that the proceeds from the mortgage solely had been used to pay expenses of the business. If the defendant did not believe that the proceeds had been used solely for business expenses, then he would not have been *justified* in relying on such a representation, which he believed to be false, when agreeing to assume the mortgage payments. See *Giametti* v. *Inspections, Inc.*, 76 Conn. App. 352, 363, 824 A.2d 1 (2003) (one who supplies false information for guidance of others in business transactions subject to liability for pecuniary loss caused to those whom *justifiably* relied on that information). Reviewing the record, we conclude that the court's finding that the defendant failed to prove fraudulent misrepresentation has support in the record, and we are not left with a definite and firm conviction that a mistake was made. We conclude, therefore, that the court's finding was not clearly erroneous.

## II

The defendant next claims that the court improperly construed the term "income" in the parties' agreement to mean "gross income." He argues that the under the plain meaning of the agreement, he would pay the mortgage from the "net income" of the garage, with no payment being made if there was insufficient "net income" to cover the payment. We disagree.

Initially, we determine the appropriate standard of review, which is disputed by the parties. The defendant argues that the court did not find the agreement ambiguous but that it misconstrued the plain meaning of term "income" to mean "gross income." He argues that our review is plenary. The plaintiff, on the other hand, argues that the court did find the agreement to be ambiguous and that it looked at the circumstances surrounding the agreement before determining that the parties intended that the term "income" be synonymous

with "gross income." She argues that our review of this factual finding is under the clearly erroneous standard. We agree with the plaintiff.

"In giving meaning to the terms of a contract, the court should construe the agreement as a whole, and its relevant provisions are to be considered together. . . . The contract must be construed to give effect to the intent of the contracting parties. . . . This intent must be determined from the language of the instrument and not from any intention either of the parties may have secretly entertained. . . . [I]ntent . . . is to be ascertained by a fair and reasonable construction of the written words and . . . the language used must be accorded its common, natural, and ordinary meaning and usage where it can be sensibly applied to the subject matter of the contract. . . . When the language is clear and unambiguous, however, the contract is to be given effect according to its terms. . . . In such a case, no room exists for construction." (Citations omitted; internal quotation marks omitted.) *Greenburg* v. *Greenburg*, 26 Conn. App. 591, 596, 602 A.2d 1056 (1992).

To identify and to apply the appropriate standard of review, we, therefore, must determine initially whether the agreement, specifically the term "income," was unambiguous. A word is ambiguous when it is "capable of being interpreted by reasonably well-informed persons in either of two or more senses." (Internal quotation marks omitted.) *Connecticut Properties Tri-Town Plaza, LLC* v *Seymour Cinema, Inc.*, 84 Conn. App. 569, 577 n.8, 854 A.2d 756 (2004). Both parties offer reasonable interpretations of the term "income" as contained in the agreement. The fact that this term can be interpreted reasonably in two equally compelling ways is evidence, in and of itself, that the provision is ambiguous. See *Coscina* v. *Coscina*, 24 Conn. App. 190, 193–94, 587 A.2d 159 (1991).

Because we have concluded that the relevant term of the agreement is ambiguous, "[t]he determination of the intent of the parties to a contract . . . is a question of fact subject to review under the clearly erroneous standard." (Internal quotation marks omitted.) *Santana* v. *Hartford*, 94 Conn. App. 445, 465, 894 A.2d 307, cert. granted on other grounds, 279 Conn. 901, 901 A.2d 1223 (2006). "The trial court's findings are binding upon this court unless they are clearly erroneous in light of the evidence and the pleadings in the record as a whole. . . . We cannot retry the facts or pass on the credibility of the witnesses. . . . A finding of fact is clearly erroneous when there is no evidence in the record to support it . . . or when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed . . . ." (Internal quotation marks omitted.) *Jo-Ann Stores, Inc.* v. *Property Operating Co., LLC*, 91 Conn. App. 179, 191, 880 A.2d 945 (2005). Having thoroughly reviewed the briefs, record and transcripts, we conclude that the court's finding was not clearly erroneous.

In this case, the court specifically found: "The agreement clearly specifies that payment is to be made from the income at Phillips Repair. The terms of a contract are to be construed in accord with . . . their popular ordinary meaning unless their context, or the circumstances, show that a special meaning was intended. . . . Income means a gain or recurring benefit measured in money that derives from capital or labor. . . . There is no mention in the agreement of whether the obligation is to be paid from gross or net income and, consequently, there is no guidance from the document itself as to what was intended. However, common experience is that debts are to be paid out of the gross income, as clearly [the defendant] intended to pay the other debts of the business." Additionally, the court

found the defendant's interpretation to be "disingenuous in that [he] had paid the Reed Street mortgage, without protest, in the years when there was insufficient net income to cover to mortgage." Reviewing the record before us, we conclude that there is evidence to support the court's finding, and we are not left with a firm conviction that a mistake has been made. We conclude, therefore, that the court's finding was not clearly erroneous.

The judgment is affirmed.

In this opinion the other judges concurred.