STEPHEN K. REICHENBACH ET AL. *v.* KRASKA
ENTERPRISES, LLC
(AC 26022)

DiPentima, McLachlan and Hennessy, Js.

Argued October 9, 2007—officially released January 29, 2008

*Neil R. Marcus*, with whom was *Barbara M. Schellenberg*, for the appellant (defendant).

*Thomas W. Beecher*, for the appellees (plaintiffs).

*Opinion*

McLACHLAN, J. The defendant, Kraska Enterprises, LLC, appeals from the judgment of the trial court, rendered after a trial to the court, granting a permanent injunction in favor of the plaintiffs, Stephen K. Reichenbach, Ronald W. Kern, Ethel A. Kern, Curtis J. Knapper and Barbara K. Knapper.[1] The defendant claims that the court improperly (1) denied its motion to dismiss the plaintiffs' action for failure to exhaust administrative remedies, (2) enforced a stipulated judgment against it that had been entered in 1983 and (3) construed the terms of the stipulated judgment. We affirm the judgment of the trial court.

From the evidence presented at trial, the court reasonably could have found the following facts. The plaintiffs own single-family homes on Chatterton Point, which is adjacent to the Chatterton Marina, located on Shore Drive in New Fairfield. The defendant, a limited liability company, owns and operates the Chatterton

---

[1] Stacie Ann Reichenbach also was a plaintiff, but she died before the trial commenced.

Marina. The members of the limited liability company are three brothers: Richard Kraska, Philip Kraska and Robert Kraska. Richard Kraska, the oldest brother, is the managing member of the business. The Kraska brothers have been operating the marina since 1994. Prior to that time, the grandfather of the Kraska brothers, Richard Chatterton, owned the business, and they became more involved in the operation as their grandfather's health deteriorated. The defendant acquired the marina from the grandfather's estate in 1999.

Chatterton began operating the marina in the late 1940s or early 1950s. The parties stipulated that after 1974, the marina became a preexisting, nonconforming use. Since 1974, it has been and remains located in a residential zone, which prohibits commercial marinas, boatyards and the servicing and repairs of boats and boat engines. In 1977, the town of New Fairfield brought an action against Chatterton, doing business as the Chatterton Marina, and the Candlewood Yacht Club, Inc.,[2] to enforce the town's zoning regulations and to prohibit the expansion of the nonconforming marina use. As a result of that litigation, those parties entered into a stipulated judgment that was approved by the Superior Court on January 18, 1983 (1983 stipulated judgment). In that judgment, the court ordered, inter alia, that the defendant Chatterton was permanently enjoined from (1) increasing the level and intensity of his use of the property as a boat marina and boat service business beyond that existing in June, July, August and September, 1974, (2) increasing the number of his floating piers to more than three, increasing the number of his moorings to more than fifteen and increasing the number of his boat slips to more than seventy-five, (3) storing any boats, vessels or yachts on lots designated as "E" and "F" on the map attached as schedule A to

[2] The property owned by the Candlewood Yacht Club, Inc., is located to the east of the defendant's property and is not involved in this appeal.

the judgment and (4) using the property for overnight camping.

The Kerns purchased property located at 6 Shore Drive on Chatterton Point in New Fairfield in 1972. Reichenbach and his wife purchased property at 10 Shore Drive on Chatterton Point in New Fairfield in 1991. The property of the Knappers is located between the properties owned by Reichenbach and the Kerns. Reichenbach and Ronald Kern testified about the defendant's use of the marina property and its impact on the use and enjoyment of their neighboring properties. They also testified as to the efforts made to resolve their problems with the defendant, such as talking directly with the Kraska brothers, and approaching town officials to enforce the regulations and the 1983 stipulated judgment. When their efforts failed, the plaintiffs commenced the present action against the defendant, claiming a private nuisance, and seeking damages and an injunction to prohibit its violation of the zoning regulations and the 1983 stipulated judgment.

At the conclusion of a four day trial in October, 2004,[3] counsel for the parties requested that the court allow them the opportunity to brief the legal issues and to schedule a date for oral argument. On October 15, 2004, the parties filed their posttrial briefs. The defendant also filed a motion to dismiss, with an accompanying memorandum, claiming that the court lacked subject matter jurisdiction over the plaintiffs' action because they had failed to exhaust their administrative remedies. On October 18, 2004, the court first heard argument on the defendant's motion to dismiss. After denying the motion, counsel for the parties argued the issues as briefed.

The court issued its memorandum of decision on November 3, 2004. In that decision, the court found that

---

[3] On the third day of the trial, the court, with the consent of the parties, viewed the area of Chatterton Point and the properties of the parties.

(1) the plaintiffs had standing to sue and that the matter was ripe for judicial action, (2) Richard Kraska, the defendant's financial officer, acknowledged through counsel and at trial that the marina was bound by the 1983 stipulated judgment, (3) the defendant was in violation of the orders set forth in the 1983 stipulated judgment, (4) the defendant created an ongoing nuisance to the plaintiffs, whose safe and quiet enjoyment of their properties had been compromised, and (5) the defendant, through purposeful interactions with various town officials, had thwarted the efforts of the plaintiffs and the current zoning commission to enforce the applicable regulations and the 1983 stipulated judgment.

The court rendered judgment in favor of the plaintiffs and issued a permanent injunction enjoining certain activities and ordering certain actions to be taken in connection with the operation of the marina. Included in the orders was the requirement that the defendant comply with the applicable regulations of the town of New Fairfield and the 1983 stipulated judgment. The court did not award monetary damages. This appeal followed.[4]

---

[4] When the defendant filed its appeal, the plaintiffs timely filed their own statement of issues, claiming, as an alternate ground for affirming the court's judgment, that the town's zoning regulations prohibiting the expansion of nonconforming uses would require the rendering of judgment in favor of the plaintiffs even if the 1983 stipulated judgment did not apply to the defendant. The plaintiffs filed a motion for articulation with the trial court in order to present an adequate record to this court in connection with that claim.

Pursuant to an order of this court, the trial court further articulated its order as follows: "The court finds that the parameters for approved activities were set out in the 1983 judgment of the court and that the conduct of the defendant postjudgment violated that order. Those prior violations and the uses enjoined by the court order are unlawful expansions of valid nonconforming uses, which are in violation of the zoning regulations of the town of New Fairfield."

Because we do not agree with the defendant's claims on appeal, we need not consider the plaintiffs' alternate ground for affirmance or the arguments presented by the defendant addressed to that issue.

I

As a threshold matter, we address the defendant's claim that the court lacked subject matter jurisdiction because the plaintiffs failed to exhaust their administrative remedies. The defendant filed a motion to dismiss the action after the parties had rested but before the court rendered its judgment. "[O]nce the question of lack of jurisdiction of a court is raised, [however, it] must be disposed of no matter in what form it is presented . . . and the court must fully resolve it before proceeding further with the case." (Internal quotation marks omitted.) *D'Eramo* v. *Smith*, 273 Conn. 610, 616, 872 A.2d 408 (2005).

"Under our exhaustion of administrative remedies doctrine, a trial court lacks subject matter jurisdiction over an action that seeks a remedy that could be provided through an administrative proceeding, unless and until that remedy has been sought in the administrative forum. . . . In the absence of exhaustion of that remedy, the action must be dismissed." (Internal quotation marks omitted.) *Miskimen* v. *Biber*, 85 Conn. App. 615, 618 n.3, 858 A.2d 806 (2004), cert. denied, 272 Conn. 916, 866 A.2d 1287 (2005). The defendant claims that the plaintiffs should have appealed to the town's zoning board of appeals when the town's zoning enforcement officer withdrew a cease and desist order issued to the defendant on July 16, 2001. That order indicated that the defendant was in violation of the 1983 stipulated judgment and the zoning regulations of the town of New Fairfield. At the very least, the defendant argues, the plaintiffs should have requested that the zoning enforcement officer issue another cease and desist order if they believed the defendant was continuing to violate the zoning regulations.

This claim is without merit for a number of reasons. First, the plaintiffs not only sought enforcement of the

zoning regulations but also the 1983 stipulated judgment, and they sought damages for nuisance. The court specifically found that the defendant's conduct constituted a nuisance. Second, there was testimony at trial that the cease and desist order was withdrawn by the zoning enforcement officer because the matter was thought to have been settled. There also was testimony that the neighbors had, on numerous occasions, attempted to enlist the assistance of the town in resolving their issues with the defendant. When the problems continued, Reichenbach indicated that the plaintiffs believed that they had no other recourse but to commence the present action.

In addition, our case law is clear that nearby property owners specifically and materially damaged by the violation of zoning regulations may bring private zoning enforcement actions directly to the Superior Court, without first applying to municipal zoning authorities, as an exception to the exhaustion of administrative remedies doctrine. See *Simko* v. *Ervin*, 234 Conn. 498, 504, 661 A.2d 1018 (1995); *Cummings* v. *Tripp*, 204 Conn. 67, 527 A.2d 230 (1987); *Blum* v. *Lisbon Leasing Corp.*, 173 Conn. 175, 180, 377 A.2d 280 (1977); *Miskimen* v. *Biber*, supra, 85 Conn. App. 617 n.3; *Raymond* v. *Rock Acquisition Ltd. Partnership*, 50 Conn. App. 411, 415–16, 717 A.2d 824 (1998).

As noted by our Supreme Court: "At common law, property owners have the right to seek an injunction as well as damages for a nuisance affecting the enjoyment of their property. This right is supplementary to the right to seek injunctive relief from the zoning authorities for the violation of a zoning ordinance. . . . In deciding whether a nuisance exists, a court will often find it necessary to interpret the pertinent zoning regulations because the nuisance issue is intertwined with the lawfulness of the conduct involved. From a judicial

viewpoint, it would be both inefficient and time consuming to require a litigant, as a prerequisite to judicial consideration of the nuisance claim, to exhaust his or her administrative remedies by first obtaining a ruling from the zoning board of appeals as to the lawfulness of the defendant's conduct." (Citation omitted.) *Cummings* v. *Tripp*, supra, 204 Conn. 79–80.

In the present case, the plaintiffs alleged that the defendant's activities and use of the Chatterton Marina, which resulted in increased use, traffic and noise that interfered with the quiet enjoyment of their properties, constituted a nuisance to the plaintiffs. There was considerable testimony at trial by Reichenbach and Ronald Kern as to the effect of the boat traffic and repair activities of the defendant on the use and enjoyment of their properties as well as the danger to their safety and that of their families. Nuisance was not only alleged but proved to the satisfaction of the court. It specifically found that "the conduct of the defendant constitute[d] a nuisance and damages were caused to the plaintiffs," and that "[the defendant] created an ongoing nuisance to the neighbors, whose safe and quiet enjoyment of their property has been compromised."

Although the defendant never challenged the adequacy of the plaintiffs' allegations pertaining to nuisance in a pretrial motion, it claimed in its posttrial motion to dismiss that the plaintiffs' action did not fall within the exception to the exhaustion of administrative remedies doctrine because they failed to allege specific and material damage as the result of the defendant's activities but, rather, made conclusory allegations of irreparable harm. On appeal, the defendant likewise claims that the plaintiffs' nuisance allegations are "conclusory, not clear and precise allegations of specific and material claims of damage."

"[T]he interpretation of pleadings is always a question of law for the court . . . . Our review of the trial

court's interpretation of the pleadings therefore is plenary." (Internal quotation marks omitted.) *Petitte* v. *DSL.net, Inc.*, 102 Conn. App. 363, 374, 925 A.2d 457 (2007). "Our general practice in this state is to require fact pleading only. . . . Practice Book § 10-1 requires only that each pleading contain a plain and concise statement of the material facts on which the pleader relies, but not of the evidence by which they are to be proved . . . ." (Citation omitted; internal quotation marks omitted.) *Florian* v. *Lenge*, 91 Conn. App. 268, 274, 880 A.2d 985 (2005). "[T]he modern trend, which is followed in Connecticut, is to construe pleadings broadly and realistically, rather than narrowly and technically." (Internal quotation marks omitted.) *Federal Deposit Ins. Corp.* v. *Owen*, 88 Conn. App. 806, 813, 873 A.2d 1003, cert. denied, 275 Conn. 902, 882 A.2d 670 (2005).

The plaintiffs' operative complaint alleges: "By reason of the activities and uses of the Chatterton Marina cited [in the complaint], which results in increased use, traffic and noise and interference with the quiet enjoyment of the [p]laintiffs' properties, and/or constitute a nuisance to the [p]laintiffs and which also results in the impairment of the value of the [p]laintiffs' properties, if these activities and uses, which constitute expansions of any valid, non-conforming use and violations of the zoning regulations and the 1983 [s]tipulated [j]udgment are permitted to continue, the [p]laintiffs will suffer irreparable injury for which they have no adequate remedy at law." We conclude that the plaintiffs' complaint adequately defined the claim that the defendant's conduct constituted a nuisance and that the plaintiffs were specifically and materially damaged by that conduct.

The defendant also claims that the plaintiffs' action does not fall within the exception to the exhaustion doctrine because they abandoned their claim of damages at trial and presented no evidence to support the

allegations in their complaint that they had been harmed. Specifically, it argues that the plaintiffs' failure to introduce testimony by an appraiser or themselves as to the diminution in value to their properties caused by the defendant's activities precluded the court from finding that they had been damaged. We disagree.

In their prayers for relief, the plaintiffs sought, *inter alia,* money damages. The defendant is correct that no testimony was presented to the court with respect to the diminution in value of the plaintiffs' properties. Consequently, the court did not award money damages to the plaintiffs.

The plaintiffs, however, also requested injunctive relief in their prayer for relief. "If the plaintiffs have suffered special damages as alleged in their complaint, the court has equitable jurisdiction and may grant injunctive relief." *Blum* v. *Lisbon Leasing Corp.,* supra, 173 Conn. 180. Economic damage is but one form of special damage that would entitle a plaintiff to injunctive relief. See *Granger* v. *A. Aiudi & Sons,* 60 Conn. App. 36, 44–45, 758 A.2d 417, cert. denied, 255 Conn. 902, 762 A.2d 908 (2000).

In a nuisance action, the trier of fact may properly consider discomfort and annoyance. See *Filisko* v. *Bridgeport Hydraulic Co.,* 176 Conn. 33, 41, 404 A.2d 889 (1978); *Herbert* v. *Smyth,* 155 Conn. 78, 81–84, 230 A.2d 235 (1967); *Nailor* v. *C. W. Blakeslee & Sons, Inc.,* 117 Conn. 241, 246, 167 A. 548 (1933). In the present case, the court heard extensive testimony concerning the unreasonable noise, dust and traffic, as well as the danger to the plaintiffs' safety, caused by the increased boat traffic and the defendant's activities at the marina. The court's findings in this regard support the issuance of the permanent injunction.

Accordingly, the plaintiffs' action fell within the exception to the exhaustion of administrative remedies

doctrine, and the court properly denied the defendant's motion to dismiss.

## II

The defendant next claims that the court improperly enforced the 1983 stipulated judgment against it, a non-party to that judgment, because it had insufficient notice of the judgment prior to its purchase of the marina. Specifically, the defendant argues that there was no evidence that the stipulated judgment was recorded in the land records of New Fairfield or that any of the Kraska brothers had actual notice of all of the terms in that judgment. The defendant claims that, as a subsequent purchaser of the marina property, it could be bound only by those facts that appear in its chain of title to the property.

The defendant's claim regarding lack of actual or constructive notice is being raised for the first time on appeal. During the trial, counsel for the defendant, in his opening statement, indicated that the defendant intended to present evidence to show that it was in compliance, and always had been in compliance, with the 1983 stipulated judgment. The case was tried on that theory, and neither counsel nor the defense witnesses ever claimed that the 1983 stipulated judgment did not apply to the defendant. In fact, Richard Kraska testified that he was very familiar with the 1983 stipulated judgment and related the efforts of the defendant to comply with the orders set forth therein.

In its posttrial brief, and during the closing argument to the court, the defendant claimed that the 1983 stipulated judgment was not applicable because the judgment did not contain language that the orders were applicable to the "heirs, successors and assigns" of the parties to that judgment. The defendant argued that the stipulated judgment could not be enforced against it because the plaintiffs failed to prove that the defendant

was in privity with Chatterton. The court did not agree with the defendant's claim, and the defendant has not raised the privity issue on appeal.

No argument was made by the defendant, in the pleadings, briefs or statements made before the court, that it had no actual[5] or constructive notice of the terms of the 1983 stipulated judgment. Because it was not raised at trial, we will not consider the notice issue on appeal. "[A] party cannot present a case to the trial court on one theory and then seek appellate relief on a different one . . . ." (Citation omitted; internal quotation marks omitted.) *Ingels* v. *Saldana,* 103 Conn. App. 724, 730, 930 A.2d 774 (2007). "For this court to . . . consider [a] claim on the basis of a specific legal ground not raised during trial would amount to trial by ambuscade, unfair both to the [court] and to the opposing party." (Internal quotation marks omitted.) *Gilbert* v. *Beaver Dam Assn. of Stratford, Inc.,* 85 Conn. App. 663, 680, 858 A.2d 860 (2004), cert. denied, 272 Conn. 912, 866 A.2d 1283 (2005).

The court's conclusion that the 1983 stipulated judgment applied to the defendant, therefore, remains undisturbed. We also note, however, that even if the notice issue had been properly presented to the court and preserved as an issue on appeal, the defendant could not prevail because it did not challenge the court's finding that the defendant's activities constituted a nuisance and caused harm to the plaintiffs. If the stipulated judgment was not applicable to the defendant, the defendant nevertheless created a nuisance, and the court could enter injunctive relief on that basis alone.

---

[5] We note that Richard Kraska, during his direct examination, testified that he was "very familiar" with the zoning history of the marina property and, as previously stated, was "very familiar" with the 1983 stipulated judgment.

## III

Because we have determined that the 1983 stipulated judgment is applicable to the defendant for the reasons set forth in part II, we address the defendant's final claim that the court misinterpreted the terms of that judgment. In its decision, the court found that the defendant violated the stipulated judgment and ordered it to remove permanently all picnic tables and benches from the marina property. Further, the court defined a "boat slip" as "one parking space for *one* single boat, vessel, yacht or watercraft (boat) at, and tied to, the piers and/or fingers attached to said piers" and limited the defendant to a maximum number of seventy-five boat slips. (Emphasis in original.) The defendant challenges those orders, claiming that the 1983 stipulated judgment does not prohibit the use of benches and picnic tables on its property. It further argues that the term "boat slip" is not defined in the 1983 stipulated judgment and that the evidence at trial did not support the court's definition of that term.

With respect to the picnic tables and benches, the defendant is correct that no mention is made of them in the 1983 stipulated judgment. That fact, however, is of no moment. As we previously noted, the court found that the defendant's activities constituted a nuisance, and the defendant has not challenged that finding in this appeal. There was testimony presented that the defendant placed the tables and benches on the marina property sometime in 1998 or 1999. At that time, the customers of the marina began having parties and stayed late into the evening, were very loud and allowed their dogs to trespass onto the plaintiffs' properties. The court reasonably could have concluded that the noisy parties late into the evening unreasonably interfered with the plaintiffs' use and enjoyment of their properties. It, therefore, properly could enjoin the use of the tables and benches on the defendant's property.

With respect to the defendant's claim regarding the definition and number of boat slips, the 1983 stipulated judgment specifically prohibited more than seventy-five boat slips and prohibited increasing the level and intensity of the use of the property as a boat marina. That judgment, however, did not define the term "boat slip," and the parties in the present case disputed its meaning. The court heard testimony from the parties and their witnesses as to the history of the marina property and their opinions as to the proper construction of that term. In order to determine whether the defendant had violated the 1983 stipulated judgment, the court had to define the term "boat slip."

"A stipulated judgment is not a judicial determination of any litigated right. . . . It may be defined as a contract of the parties acknowledged in open court and ordered to be recorded by a court of competent jurisdiction. . . . [It is] the result of a contract and its embodiment in a form which places it and the matters covered by it beyond further controversy. . . . The essence of the judgment is that the parties to the litigation have voluntarily entered into an agreement setting their dispute or disputes at rest and that, upon this agreement, the court has entered judgment conforming to the terms of the agreement." (Internal quotation marks omitted.) *Lind-Larsen* v. *Fleet National Bank of Connecticut*, 84 Conn. App. 1, 17–18, 852 A.2d 799, cert. denied, 271 Conn. 940, 861 A.2d 514 (2004).

"In giving meaning to the terms of a contract, the court should construe the agreement as a whole, and its relevant provisions are to be considered together. . . . The contract must be construed to give effect to the intent of the contracting parties. . . . This intent must be determined from the language of the instrument and not from any intention either of the parties may have secretly entertained. . . . [I]ntent . . . is to be ascertained by a fair and reasonable construction of

the written words and . . . the language used must be accorded its common, natural, and ordinary meaning and usage where it can be sensibly applied to the subject matter of the contract." (Internal quotation marks omitted.) *Phillips* v. *Phillips*, 101 Conn. App. 65, 74, 922 A.2d 1100 (2007). "[Where] . . . there is clear and definitive contract language, the scope and meaning of that language is not a question of fact but a question of law. . . . In such a situation our scope of review is plenary, and is not limited by the clearly erroneous standard." (Internal quotation marks omitted.) *Wolosoff* v. *Wolosoff*, 91 Conn. App. 374, 381, 880 A.2d 977 (2005). Whether a contract is ambiguous is a question of law subject to plenary review. See *Enviro Express, Inc.* v. *AIU Ins. Co.*, 279 Conn. 194, 200, 901 A.2d 666 (2006).

We, therefore, must determine initially whether the agreement, specifically the term "boat slip," was ambiguous. "A word is ambiguous when it is capable of being interpreted by reasonably well informed persons in either of two or more senses. . . . 'Ambiguous' can be defined as unclear or uncertain, or that which is susceptible of more than one interpretation, or understood in more ways than one." (Citation omitted.) *Baldwin* v. *Baldwin*, 19 Conn. App. 420, 422, 562 A.2d 581 (1989). We conclude that the term "boat slip" is not self-evident and is, therefore, ambiguous.

"Because we have concluded that the relevant term of the agreement is ambiguous, [t]he determination of the intent of the parties to a contract . . . is a question of fact subject to review under the clearly erroneous standard. . . . The trial court's findings are binding upon this court unless they are clearly erroneous in light of the evidence and the pleadings in the record as a whole. . . . We cannot retry the facts or pass on the credibility of the witnesses. . . . A finding of fact is clearly erroneous when there is no evidence in the record to support it . . . or when although there is

evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed . . . ." (Citation omitted; internal quotation marks omitted.) *Phillips* v. *Phillips*, supra, 101 Conn. App. 75.

Here, the court was presented with dictionary definitions and witness testimony as to the definition of "boat slip." The court adopted the definition given by the zoning enforcement officer, the zoning commission and Reichenbach. It declined to adopt the definition proffered by Richard Kraska. Having thoroughly reviewed the briefs, record and transcripts, we conclude that the court's definition of "boat slip" was not clearly erroneous.

The judgment is affirmed.

In this opinion the other judges concurred.