## BRIAN GRISSLER ET AL. *v.* ZONING BOARD OF APPEALS OF THE TOWN OF NEW CANAAN
### (AC 33997)

DiPentima, C. J., and Bear and West, Js.

Argued October 23, 2012—officially released March 19, 2013

*Michael P. Sweeney*, with whom, on the brief, was *Susan R. Briggs*, for the appellant (plaintiffs).

*Louis Ciccarello*, for the appellee (defendant).

*Opinion*

BEAR, J. The plaintiffs, Brian Grissler and Patricia Grissler, appeal from the judgment of the Superior Court dismissing their appeal from the decision of the defendant, the zoning board of appeals of the town of New Canaan (board), upholding a cease and desist order issued against the plaintiffs. On appeal, the plaintiffs claim that the court erred in concluding that the board's interpretation of the term "storage" found in article 3, § 3.3.A.7 of the New Canaan zoning regulations (regulations) was proper, and that there is not substantial evidence in the record to support the court's finding that the commercial flatbed tow truck at issue (truck) was "primarily housed" at the property. We affirm the judgment of the Superior Court.

The following facts and procedural history, as set forth by the court in its memorandum of decision and as supported by the record, are relevant to our resolution of this appeal. The plaintiffs own property located at 42 Dabney Road (property) in New Canaan (town). The property is located in the town's two acre residence zone, and the plaintiffs reside in a home on the property. Beginning in 2005, town officials began receiving complaints that the truck was parked at the property for extended periods of time. The truck was used by the plaintiffs' daughter, Katelyn Grissler, who worked for a Norwalk based towing company. According to the plaintiffs, their daughter lived part-time at their residence and part-time at an apartment in Norwalk. Section 3.3.A.7 of the regulations requires a commercial vehicle of over 1000 pound capacity to be housed in an enclosed structure if it is being maintained or stored in a residential zone.

On January 7, 2010, the plaintiffs received a cease and desist order from Steve Kleppin, the town's zoning enforcement officer, instructing them to "immediately remove the flatbed tow truck and cease storing it" on the property. The plaintiffs appealed to the board from Kleppin's order. On March 1, 2010, the board held a public hearing on the plaintiffs' appeal. Following the close of the public hearing, the board denied the plaintiffs' appeal, thereby upholding the cease and desist order. On March 22, 2010, the plaintiffs appealed the board's decision to the Superior Court, which held a hearing on April 28, 2011. On May 18, 2011, the court rendered judgment affirming the decision of the board and dismissing the plaintiffs' appeal. The plaintiffs filed a petition for certification to appeal to this court. On October 19, 2011, we granted the petition and this appeal followed.

The plaintiffs claim that the board incorrectly interpreted the meaning of the term "storage" contained in

§ 3.3.A.7 of the regulations. Specifically, the plaintiffs argue that in interpreting the meaning of the term "storage" contained in § 3.3.A.7, the board failed to enunciate the temporal component of that term as used in the regulations.[1] The board argues that it properly interpreted the term "storage" in § 3.3.A.7 and applied that definition to the facts of the case in deciding to uphold the cease and desist order.[2]

Before addressing the plaintiffs' claim, we set forth the applicable standard of review. Because the court interpreted the regulation and drew conclusions of law, our review of the plaintiffs' claim is plenary. "When . . . the trial court draws conclusions of law, our review is plenary and we must decide whether its conclusions are legally and logically correct and find support in the facts that appear in the record." (Internal quotation marks omitted.) *Waterbury* v. *Washington*, 260 Conn. 506, 576, 800 A.2d 1102 (2002).

"Under our well established standard of review, [w]e have recognized that [a]n agency's factual and discretionary determinations are to be accorded considerable weight by the courts. . . . Cases that present pure questions of law, however, invoke a broader standard of review than is ordinarily involved in deciding whether, in light of the evidence, the agency has acted unreasonably, arbitrarily, illegally or in abuse of its discretion. . . . We have determined, therefore, that . . .

[1] In the alternative, the plaintiffs claim that if the court determined that the record did not contain sufficient information to permit it to interpret the term "storage," then the court should have remanded the case to the board or to the town planning and zoning commission with instructions to define the term "storage." Because we conclude that the plaintiffs' parking of the vehicle on the property constitutes "storage" under the regulations as a matter of law, we need not consider the plaintiffs' alternative claim.

[2] In the alternative, the board argues that the plaintiffs improperly maintained the truck on the property in violation of § 3.3.A.7. Because we conclude that the board's interpretation of the term "storage" was reasonable and that the board's decision to uphold the cease and desist order was correct, we need not consider this ground as a basis for affirmance.

deference . . . to an agency's interpretation of a statutory term is unwarranted when the construction of a statute . . . has not previously been subjected to judicial scrutiny [or to] . . . a governmental agency's time-tested interpretation . . . .

"The zoning regulation at issue in the present case has not previously been subjected to judicial scrutiny. Moreover, the board did not indicate that it had applied a time-tested interpretation of the regulation. Accordingly, we do not defer to the board's construction and exercise plenary review in accordance with our well established rules of statutory construction. . . .

"Resolution of this issue requires us to review the relevant town regulations. Because the interpretation of the regulations presents a question of law, our review is plenary. . . . We also recognize that the zoning regulations are local legislative enactments . . . and, therefore, their interpretation is governed by the same principles that apply to the construction of statutes. . . . Whenever possible, the language of zoning regulations will be construed so that no clause is deemed superfluous, void or insignificant. . . . The regulations must be interpreted so as to reconcile their provisions and make them operative so far as possible. . . . When more than one construction is possible, we adopt the one that renders the enactment effective and workable and reject any that might lead to unreasonable or bizarre results." (Citations omitted; internal quotation marks omitted.) *Heim* v. *Zoning Board of Appeals*, 289 Conn. 709, 714–16, 960 A.2d 1018 (2008).

In interpreting § 3.3.A.7, we are mindful that "regulations must be reasonably precise in subject matter and reasonably adequate and sufficient to give both the [board] and those affected by its decision notice of their rights and obligations." *Sowin Associates* v. *Planning & Zoning Commission*, 23 Conn. App. 370, 376, 580 A.2d

91, cert. denied, 216 Conn. 832, 583 A.2d 131 (1990). The stated purpose of article 3 of the regulations is to maintain the character of the neighborhoods located in residential zones. New Canaan Zoning Regs., art. 3, § 3.1. Article 3, § 3.3 of the regulations sets forth the permitted accessory uses in residential zones that will not interfere with the character of the neighborhoods. New Canaan Zoning Regs., art. 3, §§ 3.3 and 3.1. The relevant accessory use at issue in this appeal is found in § 3.3.A.7, which provides: "When housed in an enclosed structure, maintenance or storage of not more than one (1) commercial vehicle of over one-thousand (1,000) pound capacity or one (1) self-propelled heavy-construction equipment unit provided that no vehicle for the transportation of refuse, garbage, or septic waste shall be maintained or stored in a residential zone." New Canaan Zoning Regs., art. 3, § 3.3.A.7.[3]

The term "storage" is not defined in the regulations, but article 2, § 2.1.C of the regulations provides alternate sources to which the board can look for guidance when interpreting terms not defined in the regulations. Specifically, § 2.1.C provides: "In the interpretation and enforcement of these [r]egulations, words not defined in this [a]rticle shall be interpreted by the [board] after consulting one or more of the following:

"1. The State Building Code, as amended.

"2. The Connecticut General Statutes, as amended.

"3. The Illustrated Book of Development Definitions (Rutgers University, Center for Urban Policy Research [Piscataway, NJ]), as amended.

"4. Black's Law Dictionary.

---

[3] The parties do not dispute that the truck is a commercial vehicle of over 1000 pound capacity nor do they dispute that § 3.3.A.7 is the regulation at issue.

"5. A comprehensive general dictionary." New Canaan Zoning Regs., art. 2, § 2.1.C.

We have reviewed each of the sources referenced in § 2.1.C of the regulations.[4] General Statutes § 22a-161 (2.1) (p) defines "storage" as "the holding of waste for treatment or disposal." This case does not involve the storage of waste and, therefore, this definition is of no significance in this case. Black's Law Dictionary does not define "storage," but it defines the verb "store" as "[t]o keep (goods, etc.) in safekeeping for future delivery in an unchanged condition." Black's Law Dictionary (9th Ed. 2009). This definition, however, does not lend any clarification to the term "storage" as used in § 3.3.A.7, which deals with commercial vehicles.

The Latest Illustrated Book of Development Definitions does not contain a definition of the term "storage." It, however, defines the term "outdoor storage" as "keeping, in an unenclosed area, of any goods, junk, material, merchandise, or vehicles in the same place for more than 24 hours. *See* RETAIL SALES, OUTDOOR." H. Moskowitz & C. Lindbloom, The Latest Illustrated Book of Development Definitions (Rev. Ed. 2003) pp. 380, 274. The Latest Illustrated Book of Development Definitions also provides commentary accompanying the definition of the term "outdoor storage," which has a clear focus on the display of goods and merchandise.[5] The commentary specifically distinguishes such storage of goods and merchandise from

---

[4] This court found no definition of the term "storage" in the State Building Code.

[5] The commentary to the term "outdoor storage" provides: "Many ordinances prohibit outdoor storage entirely or allow it only in certain restricted zones and in the rear yard only. In addition, the outdoor storage is required to be screened from public view by fence, wall, or heavy landscaping. Where allowed, it must be on the same lot as the establishment or use for which it is providing the storage. For especially obnoxious outdoor storage uses such as junkyards, large setbacks from the street, solid fences, and a maximum height of stored material should be required.

"There are uses, however, that typically and traditionally include outdoor storage and displays. These include new and used car dealers, agriculture,

junkyards, which it refers to as especially obnoxious outdoor storage. See id., p. 274. In discussing junkyards, the commentary notes that local ordinances typically implement measures designed to hide such especially obnoxious storage from view. Id. The commentary also mentions new and used car dealers, but states that local ordinances "should establish control over these uses to ensure they do not . . . become aesthetic disasters." Id., p. 275.

Random House Webster's Unabridged Dictionary defines "storage" as the "the act of storing; state or fact of being stored" and it defines the verb "store" as "to accumulate or put away, for future use . . . ." Random House Webster's Unabridged Dictionary (2d Ed. 2001). Merriam-Webster's Collegiate Dictionary defines "storage" as "the act of storing; the state of being stored . . ." and it defines the verb "store" as "to place or leave in a location (as a warehouse, library, or computer memory) for preservation or later use or disposal." Merriam-Webster's Collegiate Dictionary (10th Ed. 1999). It, thus, can be deduced that these general comprehensive dictionaries define "storage" as the act of putting an item away for future use, and neither dictionary limits the definition to goods. Applied to a vehicle, such definitions could encompass the keeping of a vehicle for future use, but there is no definition or discussion of any temporal component that distinguishes between transient parking and storage.

In discussing the contours of "storage," the board referred to "keeping something for future use"; indicated that such keeping does not need to last for twenty-four hours; discussed repeatedly the keeping of the

---

plant and landscaping establishments, and parking lots. Hardware stores and gas stations often display merchandise outdoors. The local ordinance should establish controls over these uses to ensure they do not become nuisances, pose safety problems, and become aesthetic disasters. These controls should include traditional site plan review, minimum setbacks from street rights-of-way and property lines, sign controls, and landscaping requirements." H. Moskowitz & C. Lindbloom, supra, pp. 274–75.

vehicle on the property "day after day after day"; and indicated that the vehicle can be kept at the property for three or four hour intervals separated by going out on calls. The plaintiffs, however, argue that the definition of "storage" should follow the definition set forth in The Latest Illustrated Book of Development Definitions. Specifically, the plaintiffs argue that the twenty-four hour threshold provided in The Latest Illustrated Book of Development Definitions should define the temporal component of the term "storage" under § 3.3.A.7.

The stated purpose of § 3.3.A.7 is to maintain the character of the neighborhoods in the town's residential zones by, inter alia, not allowing the visible storage of commercial vehicles with a capacity of over 1000 pounds; it is not to manage the display of goods or merchandise in residential zones. See New Canaan Zoning Regs., art. 3, §§ 3.1 and 3.3.A.7. The Latest Illustrated Book of Development Definitions focuses on the display of goods and sets a twenty-four hour threshold that must be met before keeping goods in a location will constitute "storage." In light of the twenty-four hour threshold and the focus on the keeping of goods evidenced by the commentary, this definition is not particularly well-suited for interpreting the term "storage" within the context of § 3.3.A.7. The twenty-four hour threshold is helpful guidance for crafting a workable definition of "storage" applicable to § 3.3.A.7, but the twenty-four hour threshold would lead to an unworkable result if used as the sole basis for determining what constitutes "storage" under § 3.3.A.7, because of the ease of circumventing that time period by moving the truck off of the property once or twice a day.[6]

---

[6] A possible alternative to a time period determining whether or not storage of a vehicle has occurred is the prohibition of a vehicle on property at certain times of the day. See, e.g., *Killion v. Centralia*, 381 Ill. App. 3d 711, 715, 885 N.E.2d 1199 (no overnight storage), cert. denied, 229 Ill. 2d 625, 897 N.E.2d 253 (2008). This approach, however, would not prohibit a vehicle from being kept on the property for in excess of four continuous hours each day, so it is not helpful in the context of the board's interpretation and application of § 3.3.A.7.

The common element among the definitions of "storage" discussed previously in this opinion is that an item must be in a fixed location for an extended period of time. As stated previously, the general comprehensive dictionaries define "storage" as the act of putting an item away for future use. Within the context of § 3.3.A.7, defining "storage" as leaving in place for more than a transient period of time on a regular or continuing basis, as occurred in this case, a commercial vehicle of over 1000 pound capacity for future use, leads to a workable result because it does not provide a definition completely divorced from the context in which the regulation was created. This definition is broader than the definition set forth in The Latest Illustrated Book of Development Definitions for which the plaintiffs advocate, but it is not limited to the storage of goods as is the definition in The Latest Illustrated Book of Development Definitions. Interpreting "storage" in accordance with the general dictionaries' definitions provides a reasonable interpretation of the term that harmonizes the definition with the context of § 3.3.A.7 within the broader context of article 3 of the regulations. Section 3.3 permits accessory uses that will not interfere with the character of the neighborhoods and § 3.3.A.7, thus, permits property owners in residential zones to store one commercial vehicle of over 1000 pound capacity on their property, which is an otherwise prohibited accessory use, but requires that the property owners house the vehicle in an enclosed structure.[7] Keeping such a vehicle on the property for more than transient intervals of time, and doing so repeatedly, therefore, without an enclosed structure reasonably constitutes "storage" as prohibited by § 3.3.A.7.

In light of our interpretation of § 3.3.A.7 and our interpretation of the term "storage" within the context of

---

[7] There likely are other regulations that would apply regarding the nature of the enclosed structure. They, however, are not relevant to the issue on appeal.

§ 3.3.A.7, we conclude that the board's interpretation of the term "storage" was reasonable under the circumstances. The board did not need to define "storage" further by enunciating a specific temporal threshold for keeping a vehicle in a location before such keeping becomes "storage," but we recognize that the board discussed that parking the truck on the property up to four hours at a time would not constitute storage. We conclude, therefore, that the board's decision to uphold the cease and desist order was legally and logically correct and supported by the facts in the record.[8] The court therefore properly rendered judgment affirming the decision of the board and dismissing the plaintiffs' appeal.

The judgment is affirmed.

In this opinion the other judges concurred.

---

[8] Additionally, the plaintiffs claim that the court erred in finding that the truck was stored at the property because there is not substantial evidence in the record demonstrating that the vehicle was "primarily housed" at the property. Specifically, the plaintiffs argue that the court determined that § 3.3.A.7 requires a finding that the truck was "primarily housed" on the property and that the court's finding that this requirement was satisfied is not reasonably supported by the record evidence. Having concluded that the board properly determined that the keeping of the truck on the property as set forth in the record before it constituted "storage" in violation of § 3.3.A.7, we need not consider the plaintiffs' claim relating to the court's use of the term "primarily housed," it not being essential to our decision.

