MAUREEN C. LOWNEY *v.* ZONING BOARD OF
APPEALS OF THE BLACK POINT BEACH
CLUB ASSOCIATION
(AC 34594)

Beach, Sheldon and Pellegrino, Js.

Argued April 16—officially released July 16, 2013

*Mathew H. Greene*, for the appellant (plaintiff).

*Edward B. O'Connell*, with whom, on the brief, was *Mark S. Zamarka*, for the appellee (defendant).

*Opinion*

BEACH, J. The plaintiff, Maureen C. Lowney, appeals from the judgment of the trial court dismissing her appeal from the decision of the defendant, the zoning board of appeals of the Black Point Beach Club Association (board), upholding the denial of her zoning permit application to operate a dog grooming business in her attached garage. We affirm the judgment of the trial court.

The following facts and procedural history are relevant to our resolution of this appeal. The plaintiff owns real property in a residential district located within the boundaries of the Black Point Beach Club Association (association). The association is in the town of East Lyme, but has its own zoning regulations (regulations) pursuant to General Statutes § 8-1 and a special act.[1] The

[1] In 1931, a special act enabled the creation of the association. See 21 Spec. Acts 537, No. 462 (1931).

plaintiff submitted to the zoning enforcement officer of the association an application for a zoning permit to conduct a home occupation under the regulations, specifically a dog grooming business to be operated in her attached garage. The proposed use as described in the application was "home dog grooming by appt. only. No weekends. Dogs will not be brought all day long. Dogs won't bark when kept busy, being groomed—approx. three dogs per day."

Section III.4 of the regulations sets forth the parameters of home occupations and provides in relevant part: "a. Such home occupation, service or profession includes, but is not limited to, the office or studio of an architect, artist, economist, engineer, insurance agent, lawyer, photographer, or real estate broker. Such uses as physicians' offices, restaurants, tearooms, funeral homes, barbershops, beauty parlors, tourist homes, animal hospitals, any activities which constitute the manufacture of goods or products for sale, and any uses which require more than incidental traffic of clients to the dwelling, shall not be deemed to be a home occupation, service or profession. b. The total area devoted to the home occupation shall be located within the dwelling and shall not exceed twenty-five (25) per cent of the floor area of the single family dwelling. c. No one who is not a resident of the single family dwelling shall be employed or otherwise engaged in the home occupation at that address. . . ." (Emphasis omitted.)

Section I of the regulations defines "garage" and "attached garage" as follows: "Garage. A structure designed principally for shelter, enclosure or protection of vehicles. Attached Garage. A garage that is part of a dwelling by being physically connected to it by means of any permanent structural connection other than pavement or fences." (Emphasis omitted.)

The zoning enforcement officer denied the plaintiff's application, reasoning: "Not permitted under Section

III, item 4, items a & b. Must be in the dwelling and dog grooming may be noisy for the neighbors." The plaintiff appealed to the board from the denial of her application by the zoning enforcement officer.

The board held a public hearing regarding the plaintiff's appeal.[2] At the hearing, the plaintiff's counsel posited that the zoning enforcement officer erred in concluding that an attached garage was not within or part of the dwelling. The plaintiff's counsel further stated that the proposed activity would occupy a 288 square foot section of the garage, that the plaintiff would be the only person working there, that the plaintiff would groom no more than three dogs per day and thus no more than six automobile trips would be required, and that a dog would be at the plaintiff's residence for perhaps one half of the day. The plaintiff stated that when she would finish grooming a dog, she would telephone the owner and crate the dog until the owner arrived. The board voted to deny the plaintiff's appeal, thereby upholding the denial of the plaintiff's application. The plaintiff appealed from the board's decision to the trial court, and the court rendered judgment affirming the decision of the board and dismissing the appeal.

The court concluded that the proposed dog grooming business properly could be considered a home occupation under the regulations, but that because an attached garage was not part of a dwelling under the regulations, and home occupations must be conducted in a dwelling, the board properly upheld the zoning enforcement officer's denial of the plaintiff's application. The plaintiff

---

[2] Due to a technical problem, neither a transcript of the public hearing nor a transcript of the board's deliberation was submitted in the trial court. The parties stipulated before the trial court that the minutes of the public hearing with one notation constituted an accurate summary of the proceedings and that there was no necessity for testimony to attempt to reconstruct the transcript of the proceedings. The trial court approved the stipulation and found that the detailed minutes were adequate in this case.

filed a petition for certification to appeal to this court, which was granted. This appeal followed.

The plaintiff claims that the court erred in finding that an attached garage, which was the location of the plaintiff's proposed home occupation, was not part of the dwelling. We need not reach this issue because we decide this appeal on an alternative ground.

The board claims that the court's affirmance of the board's decision to uphold the zoning officer's denial of the plaintiff's application should be upheld on an alternative ground. The board argues that the court erred in reversing the board's determination that the proposed use was not a proper home occupation under the regulations. The plaintiff argues that the court properly concluded that the board's determination regarding the permitted home occupations was erroneous. We agree with the board.

"Generally, it is the function of a zoning board or commission to decide within prescribed limits and consistent with the exercise of [its] legal discretion, whether a particular section of the zoning regulations applies to a given situation and the manner in which it does apply. The trial court had to decide whether the board correctly interpreted the section [of the regulations] and applied it with reasonable discretion to the facts. . . . In applying the law to the facts of a particular case, the board is endowed with a liberal discretion, and its decision will not be disturbed unless it is found to be unreasonable, arbitrary or illegal. . . . [U]pon appeal, the trial court reviews the record before the board to determine whether it has acted fairly or with proper motives or upon valid reasons . . . . We, in turn, review the action of the trial court. . . . The burden of proof to demonstrate that the board acted improperly is upon the party seeking to overturn the board's decision. . . .

"A local board or commission is in the most advantageous position to interpret its own regulations and apply them to the situations before it. . . . Although the position of the municipal land use agency is entitled to some deference . . . the interpretation of provisions [of a municipal zoning regulation] is nevertheless a question of law for the court. . . . The court is not bound by the legal interpretation of the [regulation] by the [board]." (Citations omitted; internal quotation marks omitted.) *Doyen* v. *Zoning Board of Appeals*, 67 Conn. App. 597, 603, 789 A.2d 478, cert. denied, 260 Conn. 901, 793 A.2d 1088 (2002);[3] see also *Grissler* v. *Zoning Board of Appeals*, 141 Conn. App. 402, 405–406, 62 A.3d 539 (2013) (deference to agency's interpretation of zoning regulation unwarranted where interpretation not previously subjected to judicial scrutiny or time tested).

Dog grooming is neither expressly permitted nor expressly prohibited as a home occupation under the regulation at issue. Section III.4.a. of the regulations provides in relevant part: "Such [permitted] home occupation, service or profession includes, but is not limited to, the office or studio of an architect, artist, economist, engineer, insurance agent, lawyer, photographer, or real estate broker. Such uses as physicians' offices, restaurants, tearooms, funeral homes, barbershops, beauty parlors, tourist homes, animal hospitals, any activities which constitute the manufacture of goods or products for sale, and any uses which require more than incidental traffic of clients to the dwelling . . . ."

During the public hearing, board members compared dog grooming to a barbershop, which is specifically

---

[3] "If a board's time-tested interpretation of a regulation is reasonable, however, that interpretation should be accorded great weight by the courts." *Doyen* v. *Zoning Board of Appeals*, supra, 67 Conn. App. 604. The zoning regulation at issue has not been subjected to judicial scrutiny and the board did not indicate that it had applied a time-tested interpretation of the regulation.

excluded as a home occupation under § III.4.a. of the regulations. The court concluded that, although the services performed in dog grooming are similar to those performed at a barbershop or beauty parlor, the similarity pales when the difference in clientele is considered. The court determined that the phrase in § III.4.a. that "any uses which require more than incidental traffic of clients to the dwelling, shall not be deemed to be a home occupation" evinced a legislative intent to exclude from home occupations uses that would materially increase traffic and difficulty in parking. The court concluded that because the proposed use would generate minimal traffic and parking congestion, it was more in line with the uses permitted as home occupations.

The court erroneously concluded that the primary intent of § III.4.a. of the regulations was to exclude as home occupations only uses that generate more than incidental traffic. The uses expressly excluded as home occupations in § III.4.a. are: "Such uses as physicians' offices, restaurants, tearooms, funeral homes, barbershops, beauty parlors, tourist homes, animal hospitals, any activities which constitute the manufacture of goods or products for sale, *and any uses which require more than incidental traffic of clients to the dwelling* . . . ." (Emphasis added.) This provision sets forth examples of specific excluded uses, such as barbershops and animal hospitals, and then sets forth two additional categories of excluded uses: (1) activities that constitute the manufacture of goods or products for sale; and (2) uses that require more than incidental traffic of clients to the dwelling. The provision regarding traffic was preceded by the word "and," indicating that it did not serve to modify or to limit the previous categories, but rather was an additional category of excluded uses. If the drafters had wanted to exclude as home occupations only uses that would increase traffic, they could have phrased the provision so as to evince such

an intent, but they did not. Furthermore, barbershops, beauty parlors and animal hospitals were expressly excluded without regard to whether these businesses limit the number of clients seen per day. Thus the amount of traffic generated by this proposed use, while perhaps incidental, is not necessarily a basis on which to decide whether the proposed use is an excluded home occupation.

In support of her argument that the intent of the regulations in excluding certain uses was to lessen traffic, the plaintiff points to the "purposes" section of the regulations, which lists lessening congestion on streets. This section provides: "These regulations are adopted for the purposes set forth in the General Statutes of the State of Connecticut, namely; to promote the health, safety and general welfare of Black Point Beach Club Association with a view of conserving the value of buildings and encouraging the most appropriate use of land throughout such municipality; to protect the existing and potential public surface and ground drinking water supplies; to lessen congestion in the streets; to secure safety from fire, panic, flood and other dangers; to provide adequate light and air; to prevent the overcrowding of land; to avoid undue concentration of population; and to facilitate the adequate provision for transportation, water, sewerage, parks and other public requirements."

This section lists many purposes, any of which could inform the drafters' reasoning for prohibiting some uses and permitting others. It is clear that the line between permitted and prohibited uses was not intended to be drawn only with respect to potential traffic congestion, as opposed to any other purpose. As stated previously in this opinion, § III.4.a. of the regulations prohibits, among other uses, those uses that generate more than incidental traffic, indicating that traffic was one concern of many. It was within the board's prerogative to determine that a dog grooming business was more

similar to the prohibited uses under the regulations than to the permitted uses.

We conclude that the court properly affirmed the decision of the board, albeit on an alternative ground, to uphold the zoning enforcement officer's denial of the plaintiff's application to conduct a dog grooming business as a home occupation.

The judgment is affirmed.

In this opinion the other judges concurred.